Goehmann, Appellant, vs. National Biscuit Company and others, Respondents. [Two cases.]
Immel, Appellant, vs. National Biscuit Company and others, Respondents.

*March 13—April 7, 1931.*

T. L. Doyle of Fond du Lac, for the appellants.

For the respondents National Biscuit Company and J. S. Cattell there was a brief by *Richmond, Jackman, Wilkie &*

*Toebaas* of Madison, and oral argument by *Ralph W. Jackman* and *W. L. Jackman.*

For the respondent Immel there was a brief by *Stephens, Sletteland & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

OWEN, J. On the 28th day of September, 1928, H. J. Immel was driving his automobile in an easterly direction on county trunk highway K, in Dane county. While crossing state trunk highway No. 51 a collision occurred between his automobile and a truck driven by the defendant J. S. Cattell, which truck it is alleged then belonged to and was being operated in the business of the defendant National Biscuit Company. The plaintiffs Otto Goehmann, Lena Goehmann, and Emma Immel were passengers in H. J. Immel's car. They sustained damages, to recover which these actions were brought. They were consolidated for the purposes of trial, were argued together in this court, and will be disposed of in a single opinion.

State trunk highway No. 51 is an arterial highway. At the time of the accident there was a "Stop" sign located on county trunk highway K about forty feet west from the tarvia on highway 51. Immel stopped his car in close proximity to this "Stop" sign, looked north and south, and then proceeded slowly with a view of entering highway 51. As the front wheels of Immel's car reached the tarvia on highway 51, Immel and each of the plaintiffs saw the defendant's truck coming from the south at a point which they testified to have been between 147 and 172 feet from the line of travel of the Immel car. Immel proceeded to cross the tarvia at a speed of seven or eight miles an hour. As the front wheels of his automobile passed over and off from the tarvia the Immel car was struck by the defendant's truck.

The jury found that none of the plaintiffs, nor the interpleaded defendant Immel, failed to exercise ordinary care with respect of keeping a lookout. They therefore accepted

as a verity the testimony of the occupants of the Immel car that they all looked and saw the truck coming. They found that Immel was negligent in the management of his car, but that he was not negligent in failing to yield the right of way. They found negligence on the part of the plaintiffs by failing to protest, but it is not found in what respect they should have protested. Upon this appeal, therefore, we are concerned only with the negligence of the plaintiffs, and that negligence is limited to their failure to protest.

It is a general rule that passengers in an automobile must exercise due care for their own safety. This requires them to exercise due care to keep a lookout, to warn the driver of approaching danger, to protest against excessive speed, reckless driving, and dangerous practices indulged in by the driver. The duty of "driving from the back seat," however, has not been imposed upon passengers in an automobile, and we are a little surprised to find an apparent sanction of this abominable practice in this verdict. We are also at a loss to understand the nature of the protest which it is thought should have been made by these plaintiffs.

Immel was driving his car carefully in second gear at a speed of between seven and eight miles an hour when the front wheels reached the tarvia and when all of the occupants of the automobile saw the truck approaching from the south at a distance estimated from 147 to 172 feet, according to their testimony. That they were mistaken as to this distance seems probable, as the truck would have to go nine times as fast as the Immel car was going, or at a speed of seventy-two miles an hour, in order to collide with the Immel car. They might have been mistaken as to the exact distance that the truck was from the intersection, but it must be regarded as a verity that they all saw the truck and that they all thought they had ample time to cross ahead of the truck. The jury must have so thought, or it could not have freed Immel of negligence in failing to yield the right of way.

The trial judge so thought, because in his opinion upon motions made after verdict he stated that, Immel having kept a proper lookout, and seen this truck, there was but one of two things for him to have done: "if he was going to cross under those conditions, he should have speeded up his car and got out of the way, which he could have done easily if he had gone at the lawful rate of speed of fifteen miles an hour." The view of the court was that either he should not have attempted to cross, or, having started, he should have speeded up his car to fifteen miles an hour, which would have enabled him to get across. If that was the situation, what duty devolved on the plaintiffs in the premises?

The plaintiffs were not negligent in failing to warn Immel of the approaching car because he was aware of its approach. They were not negligent in failing to protest against an effort to cross ahead of the truck, because the court says that could easily have been done if he had speeded up his car to fifteen miles an hour, which is apparent from the physical facts. The negligence of Immel consisted in the manner in which he managed his car at the moment. We do not consider that the law casts upon the occupants of a car any duty with reference to the manner in which it is momentarily managed by the driver. Not only does it not cast any duty upon them in such respect, but it should not recognize any prerogative on their part. "Driving from the back seat" should not be encouraged when it comes to the details of car management in emergencies. The practice is not indulged by considerate persons and, if it were, the harm would exceed the good. The momentary management of the car should be left to the driver. He understands his car and appreciates the control which he has over it, and what he can do with it, better than does the passenger. Continual suggestions are but confusing and irritating, and we think it better that it be definitely understood that neither duty devolves upon, nor prerogatives belong to, the occupants of a

car to participate in its immediate management and control. They have a duty to maintain a lookout, a duty to warn, and a duty to protest against excessive speed and reckless driving. These, however, are all apart from the immediate management of the car, and especially in emergencies.

When Immel's car approached the tarvia it was a matter of judgment whether he should attempt to cross. That he had ample time to cross if he had proceeded at the moderate speed of fifteen miles an hour seems apparent. The trial judge so affirmed. He elected to cross, and he it was to make the decision. If the duty had devolved upon the occupants to make the decision they might not have agreed. One might have thought that the attempt should not be made, while others might have advised going ahead. If they had all protested, their protests might have been different and contrary, to the great disturbance and confusion of the driver. It may be conceded that if he had been urged to greater speed he might have accelerated the movement of the car and gotten across. The point is, however, that they were under no legal duty at that time and in that particular to interfere with his management and control of the car. Their failure to protest constituted no negligence on their part, if, indeed, it could be found that their failure to protest at all was a proximate cause of the accident. To so find it would be necessary to assume that the protests would all have been of the same character and that they would have been heeded by the driver. As a matter of fact they might have been contrary rather than uniform in character, and if the driver had been disposed to respect the suggestions of the occupants of the car he would have been at a loss to know what to do. The result would necessarily have been harmful rather than beneficial.

As we conclude that plaintiffs were free from contributory negligence, they are entitled to judgment upon the verdict against the defendants National Biscuit Company and

J. S. Cattell.   The defendants National Biscuit Company and J. S. Cattell are entitled to judgment for contribution on their cross-complaint against H. J. Immel.   Some point was made in the brief of respondent National Biscuit Company that it was not liable for Cattell's negligence because he was an independent contractor.   That question has been considered, and we conclude that Cattell was the servant of the National Biscuit Company, and that it is liable for his negligence as found by the jury.

*By the Court.*—Judgments reversed, and cause remanded with instructions to render judgments as indicated in the opinion.   Only one attorney's fee to be taxed.