J. S. COOPER, *Admr., Etc. v.* ESTIN R. TETER

(CC 641)

Submitted April 29, 1941.   Decided May 27, 1941.

*Keith Cunningham* and *E. A. Bowers,* for plaintiff.
*Hyer & Gibson,* for defendant.

ROSE, JUDGE:

The Circuit Court of Randolph County certified here the questions of law arising upon the sustaining of a demurrer of the defendant, Estin R. Teter, to the declaration filed against him by J. S. Cooper, as administrator of the personal estate of Wilbur B. Cooper, deceased.

This is an action of trespass on the case to recover for the death of Wilbur B. Cooper, which occurred on U. S. Highway No. 33 on the west side of the Allegheny Mountain in Randolph County, near a point where the defendant had placed on said highway a wrecking truck for the retrievement of an automobile which had gone off the road. The decedent came to the scene from his nearby residence, and while remaining on the road, is alleged to have voluntarily rendered assistance to the defendant by giving warning to approaching motorists. An automobile, descending the mountain from the east, slipped and skidded on the highway and thereby struck him, inflicting the injuries from which he died. The accident occurred

between seven and eight o'clock on the evening of January 27, 1940.

The declaration is in two counts, the first undertaking to show a violation of the road and motor vehicle laws and traffic regulations of this state; the second, being based on the alleged negligent conduct of the defendant in obstructing the highway with his wrecking truck.

The demurrer was interposed on the ground that the decedent's death was caused exclusively by the negligence of the driver of the car which struck him; that "the decedent was not using the public highway for the purpose for which it was intended and was not traveling on said public highway"; and that the declaration shows the decedent to have been guilty of contributory negligence, barring the plaintiff's recovery herein.

Before we can determine whether the declaration shows any actionable negligence by which the defendant was rendered liable for the death of the decedent, it is necessary to decide the precise status of the latter as disclosed by the declaration. Each count contains the following statement:

> "* * * plaintiff's intestate, who resided near the place where said automobile had gone over the embankment, went to the scene of said accident and, as he had a right to be, was on said highway in a position above said wrecking truck, or up said highway near the right or outer side of the same, from which position he could and did render assistance to defendant, although not employed by him, by giving warning of defendant's said obstruction to said icy, slippery highway."

This does not exhibit the decedent as a traveler on the highway or as a user thereof for the purposes for which it was intended. If the decedent is regarded as merely having come to the scene out of curiosity and as being "on said highway in a position above said wrecking truck", he is at most a mere bystander or onlooker. As such, he was not strictly a pedestrian nor entitled to the full care due a pedestrian. 45 C. J., p. 840; *Peters* v. *Howenstein,* 5 Ohio App. 160; *Currier* v. *Dartmouth College,* 117 Fed.

44, 54 C. C. A. 430. If the decedent is to be considered in the aspect of a voluntary assistant to the defendant, the duty of the defendant toward him would not be enhanced. The declaration alleges that he was rendering assistance to the defendant, although not employed by him, but it does not allege that the defendant, either accepted or knew of this assistance. Such a volunteer would stand no higher than a mere onlooker. 45 C. J., p. 840; *Richardson v. Babcock Co.,* 175 Fed. 897, 99 C. C. A. 353; *Armour & Co. v. Rose,* 183 Ark. 413, 36 S. W. (2d) 70; *El Paso Laundry Co. v. Gonzales,* (Tex.) 36 S. W. (2d) 793.

The alleged negligence of the defendant is that he

"* * * placed his said wrecking truck in a position above and opposite to said automobile, and substantially at right angles to, across and upon the pavement and driveway of said highway, which was paved for a width of about eighteen feet, and which pavement and driveway was very slippery by reason of ice which had formed and existed upon said pavement, * * *. In placing said wrecking truck upon and across said highway, defendant faced it towards the rocky side cut on the northern or upper side, with its headlights cast upon that rocky, steep side wall and with the rear end thereof, from which the hoisting crane extended and was operated, pointing toward the automobile which was over the bank, * * *. Whereby, said wrecking truck, which extended across or substantially across the full width of the highway, obstructed the same and seriously and unlawfully interfered with travel thereon * * *. Wherefore, in the foregoing particulars defendant was negligent, had created a nuisance, had violated the road and motor vehicle laws and lawful traffic regulations of the State of West Virginia, * * *."

There appears to be no statute and no regulation by the State Road Commission directly applicable to the use of a wrecking truck for the retrievement of a motor vehicle which has gone off the road. It is true that the State Road Commission has adopted and promulgated certain rules of the Motor Carrier Safety Rules and Regu-

lations issued by the Interstate Commerce Commission, relating to motor vehicles which are stopped, parked or left standing on the highway, and to motor vehicles which are disabled upon the traveled portion of the highway. Part II of Rule 57, sections 22 to 25, both inclusive, of Safety Regulations promulgated by the State Road Commission. This wrecking truck did not come strictly within either of these regulatory provisions. Nor are the statutory provisions, Code, 17-8-2, and Code, 17-19-9, controlling. Wrecking trucks are necessary, and their placement and operation on the traveled portion of a highway are sometimes imperative. 2 Blashfield, Cyc. of Automobile Law, sections 1200 and 1579; *Bowmaster* v. *DePree Co.,* 258 Mich. 538, 242 N. W. 744; *Henry* v. *Liebovitz & Sons,* 312 Pa. 397, 167 A. 304; *Shearer* v. *Puent,* 166 Minn. 425, 208 N. W. 182. It was not necessarily unlawful, therefore, for the defendant to place his wrecking truck on the traveled portion of the highway. It was necessary that he so place it so as to obstruct traffic as little as possible, and that he exercise a high degree of care to guard the same and to warn approaching travelers of its presence on the highway.

The declaration does not allege that the truck could have been otherwise placed and operated. It does not show that there was berm on the lower side of the road on which the wrecker could have been operated, nor that an unnecessary portion of the wrecker was on the traveled portion of the highway. Nor does it charge clearly that there was not left adequate space, including pavement and berm, between the wrecker and the hill for the passage of traffic.

Furthermore, the declaration does not actually allege that the defendant did not take precaution to guard and warn passing traffic. It merely says that defendant

"* * * placed a small and inadequate red electric lamp some distance down the grade westward from the position of said wrecking truck, and also placed a like small and inadequate red electric lamp a short distance up the grade and eastward from the position of said wrecking

truck, placing the last mentioned lamp on or near the pavement of said highway on the northern or right hand side of said highway approaching said wrecking truck from the east, placing the same at or about the point of a slight rise or vertical curve in said highway, which rise or curve makes a hump in the pavement of said highway and prevented the driver of an automobile approaching said wrecking truck from the east from seeing the obstruction * * * upon said highway * * *."

The declaration further states that:

"* * * said light was not placed in a proper position on said highway; was not placed a sufficient distance away from said obstructing wrecking truck to afford a warning to drivers of automobiles approaching * * *."

This allegation in regard to the insufficiency of the lights is a mere conclusion of law, as is also the charge that the light was not placed a sufficient distance from the obstruction. We cannot say from the facts so pleaded that a jury would have been justified in finding the lights insufficient in size or their location improper.

And finally, the declaration alleges clearly, in another portion thereof, that there was a guard or flagman (the decedent himself) in the direction from which came the car that struck the decedent, and that this flagman did give the driver of the car warning. With the declaration thus showing the placement of at least some lights and the presence of a guard and flagman, and wholly failing to negative other care, we do not consider that it sufficiently shows that the defendant failed to exercise reasonable care toward the decedent.

The declaration also fails to show any casual connection between the acts of the defendant, and the acts of the driver of the automobile, by which decedent was struck and killed. The declaration is very indefinite as to some facts which should have been made clear. The declaration says of the highway that:

"* * * said highway, both from the east and from the west, is steep, to-wit: about 8% which

> is a rise of about 8 feet in the hundred; the place at which said automobile had left the said highway being less steep and at a grade of about 4%. Said automobile had left said highway where it is straight away, or on what is known as a tangent, * * *."

For what distance was the highway at a grade of 4%? Of what length was the straight away or tangent? The declaration further says that "some snow was falling", without stating whether there was sufficient snow to obstruct a driver's vision. It is further alleged that there was "a slight rise or vertical curve in said highway, which * * * prevented the driver of an automobile approaching said wrecking truck from the east from seeing the obstruction", but does not say for what distance this view would be obstructed. It further says that the automobile descended "said steep grade at a rapid rate of speed", without stating the speed. And finally, it is alleged that the decedent "waved his hands in an effort to give warning to the driver thereof", and "thereupon, said approaching automobile skidded and slipped upon said icy highway and turned, or partly turned, * * * and in and by the skidding, slipping and turning of said automobile, it struck" the decedent. It does not allege directly or indirectly that such skidding, slipping or turning was caused by the presence of defendant's wrecking truck on the highway.

It, therefore, clearly appears that the declaration does not charge, or pretend to charge that the loss of control of the automobile, which killed the decedent, was in any way caused by the defendant, or was the result of his alleged negligence. On the other hand, the whole facts as pleaded lead inevitably to the conclusion that the decedent's injury was either the result of the independent negligence of the driver of the automobile, or of an unavoidable accident.

As to the conduct of the decedent, it appears clearly from the declaration that he "resided near the place where said automobile had gone over the embankment", from which we may reasonably assume that he was fully ac-

quainted with the road, its character, the ice and snow thereon, and all the surroundings. The declaration further alleges that he "went to the scene of said accident and, as he had a right to be, was on said highway in a position above said wrecking truck", thereby showing that he deliberately placed himself in the position where he was at the time of the accident. He knew of the presence of the truck on the road and every circumstance pleaded which rendered the situation dangerous, and must, therefore, be charged with the premeditated and voluntary assumption of all the risks inherent in the situation.

Finally, in brief and argument here, it is urged that, since the declaration further alleges that the decedent, immediately before he was struck, "waved his hands in an effort to give warning to the driver" of the automobile by which he was killed, the decedent occupied the position of a "rescuer", and that, therefore, he was exempt from the charge of contributory negligence and of the assumption of risk. *Bond* v. *Railroad Co.*, 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201; *Walters* v. *Appalachian Power Co.*, 75 W. Va. 676, 84 S. E. 617. This position is not tenable. In the first place, he was not attempting to rescue anybody. The utmost that is said of him is that he gave warning to approaching motorists. The giving of warning alone was not the act of one attempting to "rescue" such motorist. And in the second place, his actions lack the element of spontaneous impulse and the inspiration of a sudden emergency, which are the basis of the rescuer's exemption from the rule of contributory negligence. The decedent voluntarily, and with ample time for deliberation, went to the position in which he was standing when injured. He was on the left-hand side of the road of motorists approaching from the east, apparently a place of safety. He appears to have flagged or warned other passing cars, as the declaration says that he "could and did render assistance to defendant, * * * by giving warning of defendant's said obstruction." This does not describe an act on sudden impulse, nor the thoughtlessness of a thing done in a sudden emergency.

Our conclusion, therefore, is that the declaration does not charge a violation by the defendant of the degree of care which he owed to the decedent; that it fails to show any casual connection between the acts done or omitted by the defendant and the striking of the decedent by the approaching automobile from which he died; that, as the record now is, the decedent clearly assumed the risks of his position voluntarily, and is not exempt from such risks on the theory that he was a rescuer.

The judgment of the trial court, therefore, is affirmed.

*Affirmed.*