VANDENACK and another, Appellants, vs. CROSBY and others, Respondents.

*March 6—April 9, 1957.*

For the appellants there were briefs by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson* and *James L. Everson.*

For the respondents Burton L. Crosby and Yorkshire Indemnity Company there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

For. the respondent Mutual Automobile Insurance Company of the Town of Herman there was a brief by *Holden & Schlosser* of Sheboygan, and oral argument by *Wayne W. Schlosser.*

CURRIE, J.   The first question which confronts us on this appeal is whether the trial court was correct in ruling as a matter of law that Clausen, the operator of the wrecker, was not causally negligent in parking or stopping the wrecker on the left side of the highway.

The authority cited by the trial court, in its memorandum opinion in support of the conclusion reached on this point, is *Walton v. Blauert* (1949), 256 Wis. 125, 40 N. W. (2d) 545. In that case one car was towing another at night and came to a stop on the left side of the highway. While so

stopped they were struck by an automobile coming from the opposite direction. The jury found the operators of the towing and towed vehicles causally negligent with respect to parking their vehicles without leaving 15 feet of clearance, and such finding was upheld by the trial court. Upon appeal this court reversed on the ground that the negligence of the driver of the oncoming vehicle was an intervening cause. This result was later criticized in *McFee v. Harker* (1952), 261 Wis. 213, 222, 223, 52 N. W. (2d) 381. It is impossible to reconcile the determination in *Walton v. Blauert, supra,* with our more-recent decisions dealing with intervening cause such as *Ryan v. Cameron* (1955), 270 Wis. 325, 331, 71 N. W. (2d) 408. We, therefore, are of the opinion that there is no issue of intervening cause present in the instant case. If Clausen were negligent in stopping the wrecker on the left side of the highway, such negligence constituted a concurring cause of the accident the legal effect of which was not superseded by any intervening negligence of George Vandenack.

The reason for Clausen stopping the wrecker on the left side of the highway was because this was the only practical way that he could pull the Derks car out of the ditch. Inasmuch as the drum of the winch was located at the rear of the wrecker, it was necessary that the wrecker be backed into position so as to have its rear toward the rear end of the vehicle to be rescued.

Sub. (9) of sec. 85.19, Stats., provides, "No vehicle shall be parked or stopped on the left side of the highway. . . ." Sub. (8) of this same section contains an exception applicable to the other subsections of sec. 85.19, including sub. (9), in favor of disabled vehicles, but there is no express exemption from the prohibition of sec. 85.19 covering wreckers rescuing disabled vehicles. However, we deem such an exception must be implied in order to avoid an absurd and unreasonable result.

The facts present in *Kastler v. Tures* (1926), 191 Wis. 120, 124, 210 N. W. 415, bear a striking similarity to those in the instant case, except that the owner of the wrecker was the plaintiff, having brought suit for the damages sustained to the wrecker. The court therein had before it the prohibitions of the then parking statute, sec. 85.02. This was later repealed by ch. 454, Laws of 1929, which chapter enacted sec. 85.19 to take the place of such repealed statute. It was held that the owner of the wrecker was making "a proper and necessary use of the highway *under an emergency,*" and, therefore, the prohibitions of the parking statute did not apply. While it is possible to distinguish the wording of sec. 85.02, Stats. 1925, from that of present sec. 85.19, the reasoning of the court which was employed in the *Kastler Case* for exempting the wrecker from the provisions of the statute, because it was engaged in a rescue operation in an emergency, applies with equal force to both statutes.

In *Cooper v. Teter* (1941), 123 W. Va. 372, 376, 15 S. E. (2d) 152, 155, the West Virginia court had before it the question of whether certain safety rules promulgated by the state road commission relating to "motor vehicles which are stopped, parked, or left standing on the highway" applied to a wrecker engaged in rescuing a disabled vehicle. The court held that they did not, and declared:

"Wrecking trucks are necessary, and their placement and operation on the traveled portion of a highway are sometimes imperative. 2 Blashfield, Cyc. of Automobile Law and Practice, sections 1200 and 1579; *Bowmaster v. DePree Co.,* 258 Mich. 538, 242 N. W. 744; *Henry v. Liebovitz & Sons,* 312 Pa. 397, 167 A. 304; *Shearer v. Puent,* 166 Minn. 425, 208 N. W. 182. It was not necessarily unlawful, therefore, for the defendant to place his wrecking truck on the traveled portion of the highway." (123 W. Va. 376.)

We are, therefore, constrained to hold that it was not a violation of sec. 85.19 (9), Stats., for Clausen to have stopped

the defendant Crosby's wrecker on the left side of the highway in carrying on the emergency-rescue operation of pulling the Derks car out of the ditch. Therefore, the jury's finding that Clausen was causally negligent in so doing cannot be permitted to stand.

This leaves, as the only remaining ground for imposing liability upon the defendants, the finding of the jury that Clausen was causally negligent in failing to place out burning fusees, burning pot torches, or lighted red lanterns, to warn approaching traffic of the position of the wrecker. If the provisions of sec. 85.06 (18), Stats., were applicable to the wrecker after it was stopped on the left side of the highway, then the jury's finding of negligence must stand. The material portions of sec. 85.06 (18) read as follows:

"No person shall during hours of darkness permit a truck . . . to stand upon any traveled portion of a highway outside of the corporate limits of any incorporated city or village, unless there is displayed three of any one of the following lighting devices: Burning fusees, burning pot torches, lighted red lanterns. One shall be placed 10 feet to the left rear side of the vehicle, one placed approximately 125 feet to the front, and one placed approximately 125 feet to the rear of the vehicle to clearly indicate the location of such vehicle on the highway. Such lighting devices shall be so displayed during the entire time such vehicle is left standing. Every truck . . . operated upon a highway outside of the corporate limits of any incorporated city or village shall carry in a place readily accessible to the driver the lighting device so required. . . ."

Clausen testified that three or four minutes or "possibly longer" elapsed between the time he backed the wrecker into position on the north side of the highway and the time of the occurrence of the accident. In *Robinson v. Briggs Transportation Co.* (1956), 272 Wis. 448, 76 N. W. (2d) 294, a truck was being towed on a cold winter morning in order to start the truck's engine and both vehicles came to a stop on

the paved roadway. The driver of the towed truck intended to inject ether into the motor to start it, which operation would have taken not to exceed two minutes. The trial court had refused to submit any question in the verdict as to whether the truck driver was negligent in failing to comply with the provisions of sec. 85.06 (18), Stats., on the ground that such statute did not apply to a momentary stop of this nature. We reversed and held that the provisions of sec. 85.06 (18) were applicable. Therefore, the fact, that the intended stationary position of the wrecker in the instant case was only to continue for approximately four minutes, is insufficient to excuse failure to place out fusees or other warning lights in compliance with the statute.

The fact that the wrecker was engaged in an emergency-rescue operation does not excuse the failure to place out fusees, burning pot torches, or red lanterns. It was held in both *Kastler v. Tures, supra,* and *Cooper v. Teter, supra,* that a wrecker, which is stopped on a highway conducting a rescue operation, must exercise ordinary care to warn other traffic of the obstruction of the highway by the wrecker. We deem that under the facts that existed in the present case the exercise of ordinary care by Clausen required that he place out fusees, torches, or lanterns 125 feet in front and to the rear of the stopped wrecker as required by sec. 85.06 (18), Stats.

We consider that the case of *Hisaw v. Hendrix* (1950), 54 N. M. 119, 215 Pac. (2d) 598, supports our determination in this respect. There the operator of a wrecker stopped the same partly on the roadway for the purpose of walking across the highway to inspect the disabled car he came to rescue. The court held that he was negligent in failing to comply with the New Mexico statute requiring a truck to place out flares when it stops on a highway.

The trial court relied upon a statement appearing in the opinion of this court in *Miles v. General Casualty Co.*

(1949), 254 Wis. 278, 287, 36 N. W. (2d) 66, in determining that Clausen was not negligent in failing to place out fusees or other warning lights. We quote such statement:

"To require flares to be put out as required by statute and order, while a truck was actively engaged in a wrecking operation would be unreasonable. Moving about constantly it would be impossible for a truck driver to comply with the statute. Both the statute and the rule were clearly intended to apply to a vehicle that has come to rest, and not to a truck which in the course of moving the obstacle from the highway, stops a moment or two to attach a chain to a disabled truck."

In the first place such statement was *obiter dictum* because unnecessary to the result reached, which was that the plaintiff's appeal as against the defendant operator of the wrecker be dismissed for failure to serve the notice of appeal on such defendant. Secondly, Clausen's wrecker in the instant case was stopped for more than "a moment or two." This is not a case where one vehicle stopped momentarily to hitch a chain onto a disabled one intending to tow it to safety. *Robinson v. Briggs Transportation Co., supra,* is authority for the rule that a stop intended to last no more than two minutes is still within the purview of sec. 85.06 (18), Stats.

Counsel for the defendants argue that it was unnecessary for Clausen to put out fusees or other warning lights, as required by sec. 85.06 (18), Stats., because of the lights burning on the wrecker and the presence of Peterson waving the flashlight. In addition to the spotlight heretofore described, the wrecker had two lights turned on in front. However, Clausen testified that he was uncertain whether such lights were on high beam, or deflected beam, or whether it was the dimmers and not the headlights which were turned on. Furthermore, there was testimony that the wrecker faced partly to the southeast, in which case the beam would have

been off the road to the southeast instead of parallel with the highway. Peterson testified that he was standing so as to obscure plaintiffs' vision of the left of these two lights. Clausen claims that in addition to the lights mentioned, a light was burning which was at the top of the A-frame at the rear of the wrecker.

The best argument against the contention, that it was unnecessary to put out fusees, torches, or lanterns, because of the lights on the wrecker, is the following testimony of Peterson:

"Well, at the time that I came through I had seen no precautionary measures used on the front of the vehicle to warn of the hazard and I figured with people coming home from the taverns that time of the morning it was kind of a bad situation to be in at that time of the morning, so I stopped and volunteered my services."

In *Miles v. General Casualty Co., supra,* the testimony as to the location of the disabled truck being rescued by the wrecker was in dispute, but it was at least on the shoulder if not on the traveled roadway. One of the issues was whether the driver of such truck was causally negligent in failing to place out fusees or other warning lights. The same argument was advanced, as here, that the burning lights of the wrecker would have rendered the placing of such fusees or warning lights useless. In reply to such argument this court stated (254 Wis. at p. 287):

"While the headlights of the wrecker were lighted and the wrecker was facing partly in the direction from which Kern came (the east) the wrecker was at the point of danger, while the fusees, if put out as required by statute and rule, would have been 125 feet to the east and west of the wrecker and opposite it. Both the position of the fusees or lanterns and the color of the lights would have warned any observant traveler that there was danger ahead."

The arguments based upon the burning lights on the wrecker, and on the presence of Peterson waving his red flashlight 30 feet ahead of the wrecker, go to the issue of whether Clausen's negligence in failing to place out fusees or other warning lights, as required by sec. 85.06 (18), Stats., was causal. This presented a jury issue, and should not be disposed of as a matter of law by the court.

We thus have a situation where the jury found the defendant Crosby's employee, Clausen, causally negligent in two respects, one of which must be set aside for reasons heretofore stated. This in itself would require a new trial because of the possible effect such erroneous finding may have had on the comparison of negligence.

Because a new trial is necessary on this ground, it becomes unnecessary to consider some of the grounds for a new trial urged by the defendants and interpleaded defendant in the event we should reach the conclusion which we have, that it was error to dismiss plaintiffs' complaint. However, for the guidance of the trial court at the new trial, we deem it advisable to consider the contentions that questions should have been submitted in the special verdict as to possible contributory negligence and assumption of risk on the part of the plaintiff Laura Vandenack. Questions on these issues were requested to be included in the verdict, which requests were denied.

There was three tenths of a mile of straight comparatively level highway extending eastward from the place of collision. Mrs. Vandenack testified that as the Vandenack car approached along this stretch of highway she was looking "in front," which we interpret to mean straight ahead. Both she and her husband saw the red flashlight held by Peterson but mistook it for the taillight of another motor vehicle proceeding in the same direction that they were traveling. Mr. Vandenack realized his mistake too late to avoid the accident although he slammed on his brakes hard. His

testimony was that he was driving at a speed of 45 to 50 miles per hour before so applying his brakes. There is nothing in the testimony that indicates that Mrs. Vandenack saw the wrecker or its lights before her husband.

In *Goehmann v. National Biscuit Co.* (1931), 204 Wis. 427, 429, 235 N. W. 792, this court held that it is a general rule that passengers in an automobile must exercise due care for their own safety, and that this requires that they keep a proper lookout to warn the driver of approaching danger. For other cases holding to the same effect see *Krause v. Hall* (1928), 195 Wis. 565, 217 N. W. 290; *Tomberlin v. Chicago, St. P., M. & O. R. Co.* (1932), 208 Wis. 30, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208; *Hahn v. Smith* (1934), 215 Wis. 277, 254 N. W. 750; and *Teas v. Eisenlord* (1934), 215 Wis. 455, 253 N. W. 795. A guest is not held to the same degree of care with respect to lookout that is required of the driver, and one sitting in the rear seat is held to a lesser degree of care than one sitting in the front seat. *Krause v. Hall, supra.* In almost all instances the issue of the contributory negligence of a guest is for the jury to determine.

On the basis of the foregoing authorities, it was error not to have submitted questions inquiring as to the causal contributory negligence of Mrs. Vandenack.

The issue of assumption of risk is not material as to the Vandenacks' causes of action against the defendants Crosby and his insurance carrier, but is as to the cause of action for contribution set forth in the cross complaint of these defendants against the interpleaded defendant insurer of the Vandenack automobile.

Mr. Vandenack was uncertain as to the time when Mrs. Vandenack and he arrived at the tavern on the night of the accident. Mrs. Vandenack had testified upon her adverse examination before trial that it was eight o'clock. Mr. Vandenack testified that he had "a couple of beers" at the

tavern before starting to play cards and after playing cards he had "three small beers," making in all five glasses of beer he admits having drunk there. Mrs. Vandenack testified that she drank four or five glasses of beer at the tavern. They left the tavern at midnight or shortly after. A traffic officer, who arrived at the scene of the accident shortly after .it had occurred, testified that he determined that Mr. Vandenack had been drinking but that it "didn't seem to be anything excessive."

Evidence of drinking intoxicating liquor by the driver of a motor vehicle, which may be far too weak to support a criminal conviction for driving while under the influence of intoxicating liquor, may nevertheless be material on the issue of assumption of risk by a guest passenger. This is because the jury may draw the legitimate inference that the drinking was sufficient to appreciably interfere with the driver's operation of the vehicle. *Frey v. Dick* (1956), 273 Wis. 1, 9a, 76 N. W. (2d) 716, 77 N. W. (2d) 609. It is common knowledge that the consumption of alcoholic beverages does have a tendency to dull the senses of perception, although the quantity of alcohol sufficient to produce such result in one individual may have no apparent effect on another. In the instant case the operators of several cars, which had preceded the Vandenacks, had approached from the east while the wrecker was engaged in its rescue operation, and had perceived the danger in time to turn to the left and proceed in safety around the wrecker. If these drivers were able to see the lights of the wrecker, or of Peterson's lighted flashlight, in time to take effective action to avoid a collision, why had not George Vandenack done likewise? It would be permissible for the jury to draw the inference that Vandenack's failure of lookout was not due to some momentary lapse but rather to the effect of the five glasses of beer he had drunk at the tavern. Mrs. Vandenack had accompanied her husband to the tavern and had been with him when he

did this drinking. She, therefore, must be deemed to have assumed any risk resulting from his failure to maintain a proper lookout due to the drinking.

We are of the opinion that a jury issue was presented as to whether Mrs. Vandenack assumed the risk of her husband's negligent lookout, and that a question as to her assumption of risk should have been included in the verdict.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion. Costs shall abide by the result of the new trial, the plaintiffs presently to pay the clerk's fees.