BAKER, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. HERMAN MUTUAL INSURANCE COMPANY, Defendant and Appellant: MOLAND and others, Defendants and Respondents.

*October 3—October 30, 1962.*

598

For the appellant there was a brief and oral argument by *Edward M. Conley* of Rice Lake.

For the respondents Baker there was a brief by *Cameron, Cameron & Shervey,* and oral argument by *Robert O. Weisel,* all of Rice Lake.

For the respondents Moland and Carriers Insurance Exchange there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *W. W. Bitney.*

CURRIE, J. Appellant Herman Mutual raises these issues on this appeal:

(1) Did the trial court err in directing a verdict in favor of Moland Brothers and Carriers and in dismissing appellant's cross complaint for contribution?

(2) Did the trial court err in failing to find plaintiff Ronald Baker negligent as a matter of law?

(3) Should appellant be granted a new trial in the interest of justice?

## Direction of Verdict.

Appellant contends that the trial court erred in directing a verdict in favor of Moland Brothers and Carriers because the jury could reasonably infer from the evidence that Brown was negligent with respect to speed. Appellant does not argue that Brown was negligent in any other respect.

At the time of the accident, Brown was driving in a southerly direction on U. S. Highway 53 and Zaloudek was driving his car in an easterly direction on County Trunk Highway D. Highway 53 is an arterial highway with a posted speed limit of 40 miles per hour at the intersection; an arterial stop sign is located near the south edge of the traveled portion of Highway D just west of the west line of the intersection of these two highways.

Since Zaloudek and Brown were killed in the accident, Ronald Baker was the only eyewitness. He testified as follows: Shortly before the accident Zaloudek and Baker had stopped at a restaurant in Sarona. After leaving the restaurant, Zaloudek drove at a speed of 20 miles per hour but, as they approached Highway 53, reduced his speed to 10 miles per hour. Baker did not know how far the arterial stop sign was set back from the intersection. Nevertheless, when he saw that Zaloudek was not going to stop at this sign, he did not have time to protest before the collision occurred. Baker estimated that two seconds elapsed from the time the car passed the stop sign to point of impact. The Zaloudek car rolled into the intersection at a speed of 10 miles per hour.

From the damage done to the truck, Moland Brothers' head mechanic testified that the place of impact on the truck was about three inches behind the tractor's right front wheel. The traffic officer who investigated the accident found a skid mark about a foot long on the pavement which, in his

opinion, established the point of impact in the intersection. This point was 13½ feet east of the west line of the intersection. An exhibit consisting of a scale drawing of the accident shows a distance of approximately 37½ feet from the stop sign to this point of impact.

After the accident the Chevrolet was found 42 feet, five inches south of the skid mark on the pavement and the truck was 270 feet south of this mark. Before coming to rest by jackknifing across the highway, the truck, which weighed approximately 57,540 pounds at the time, snapped a utility-pole guy wire and went onto the lawn of a house located southwest of the intersection where it sheared a tree nearly four inches in diameter and demolished a parked Ford Ranchero automobile.

Moland Brothers' head mechanic, testifying as an expert, stated that the small skid mark on the pavement might have been caused either by the impact of the car in forcing the wheels on the dummy axle against the driving wheels of the tractor or by application of the brakes. He expressed the opinion that the truck's air brakes did not lock until it came to rest despite the truck's loss of an air tank while still in motion. The brakes would lock automatically within seconds of such a break in the system causing loss of air pressure.

Appellant argues that the 270 feet the truck traveled after the impact, together with the damage it did to the guy wire, tree, and Ford automobile, gives rise to an inference of speed in excess of 40 miles per hour. Nevertheless, we take judicial notice of the fact that just prior to the collision the truck had a momentum equal to the product of its mass and velocity. 1 Collier's Encyclopedia (1960), Analytical Mechanics, p. 587. Cf. *Rich Hill Coal Co. v. Bashore* (1939), 334 Pa. 449, 491, 7 Atl. (2d) 302; *American Road-Machine Co. v. Pennock & Sharp Co.* (Cir. Ct. Pa. 1890),

45 Fed. 252, 253. Therefore, if an ordinary passenger car, weighing less than two and a half tons with passengers, had done this damage and still traveled 270 feet, the facts would give rise to a reasonable inference that the car had been traveling more than 40 miles per hour. Cf. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83. We doubt, however, that such an inference could be reasonably drawn from the facts in the instant case where the moving vehicle weighed more than 10 times as much as the average passenger car with passengers.

Even if the truck was traveling in excess of forty miles per hour, we are satisfied that its speed could not have been causal. This court has never held that excessive or unlawful speed is causal merely because it places the vehicle at a particular place at a particular time. Excessive speed is causal, however, when it prevents or retards the operator, after seeing danger, from slowing down, stopping, or otherwise controlling the vehicle so as to avoid a collision. *Korleski v. Lane* (1960), 10 Wis. (2d) 163, 169, 102 N. W. (2d) 234; *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 249, 83 N. W. (2d) 487; *Heagney v. Sellen* (1956), 272 Wis. 107, 112, 74 N. W. (2d) 745, 75 N. W. (2d) 801. Because Brown, the truck driver, was killed as a result of the collision, he is presumed to have exercised due care for his own safety in all respects, including lookout, in the absence of any evidence giving rise to a reasonable inference that he failed to so do. *Weber v. Mayer* (1954), 266 Wis. 241, 249, 63 N. W. (2d) 318.

On the basis of the facts of this case, we conclude that Brown was faced with an emergency as a matter of law when he first observed that Zaloudek was not going to stop for the arterial. As Zaloudek approached the intersection he reduced his speed from 20 to 10 miles per hour. Baker testified that he did not have time to protest after realizing that Zaloudek was not going to stop for the arterial stop

sign. Sub. (2) (c) of sec. 346.46, Stats. 1959,[1] did not require that the stop for an arterial stop sign be made opposite such sign when, as here, there was no marked crosswalk, but only before entering the intersection. The stop sign in question was located about 24 feet west of the west line of the intersection. Brown had the right, until he observed otherwise, to rely on Zaloudek's obeying the law by stopping before entering the intersection. Because of the slow speed of the car, it would not have been apparent to anyone in Brown's position that Zaloudek was not going to stop until shortly before the Zaloudek car arrived at the west line of the intersection. Going at a speed of 10 miles per hour, the Zaloudek car would have traveled the 13½ feet from this west intersection line to the point of impact in about nine tenths of a second. The average time needed to move one's foot from the accelerator to the brake pedal is between three fourths and one and one-half seconds. Wisconsin's Manual for Motorists (rev. ed. 1959), p. 35. Brown could have done nothing to avoid the collision in the short space of time available to him after he first should have observed that Zaloudek was not going to stop for the arterial. Even if Brown had been afforded one and one-half seconds in which to act, he would have been confronted with an emergency as a matter of law which would have excused him

[1] Subs. (1) and (2) (c) of sec. 346.46, Stats. 1959, provide:

"(1) Every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection except when directed to proceed by a traffic officer or traffic-control signal.

"(2) Stops required by sub. (1) shall be made in the following manner:

"(c) If there is neither a clearly marked stop line nor a marked or unmarked crosswalk at the intersection or if the operator cannot efficiently observe traffic on the intersecting roadway from the stop made at the stop line or crosswalk, he shall, before entering the intersection, stop his vehicle at such point as will enable him to efficiently observe the traffic on the intersecting roadway."

from taking some action in an attempt to avoid a collision. *Rude v. Algiers* (1960), 11 Wis. (2d) 471, 478, 105 N. W. (2d) 825; *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 178, 85 N. W. (2d) 790; *Clark v. Mutual Automobile Ins. Co.* (1957), 1 Wis. (2d) 357, 362, 363, 83 N. W. (2d) 873.

In view of the foregoing we conclude that it was not error for the trial court to have directed the verdict in favor of Moland Brothers and Carriers.

### *Negligence of Plaintiff Ronald Baker.*

The question of the verdict, which inquired with respect to plaintiff Ronald Baker's negligence, read, "Just before the accident, was the plaintiff, Ronald Baker, negligent for his own safety?" The jury answered this question "No." Appellant contends that the trial court erred, as a matter of law, in declining to answer this question "Yes." Appellant maintains that Baker was negligent in these two respects: (1) Riding with a driver whom he knew, or should have known, was under the influence of intoxicating beverages; and, (2) failing to maintain a proper lookout.

At the time of the accident Baker was nineteen years of age and lived with his parents on a farm five miles east of Sarona. On the evening of the accident, Zaloudek called for him around 9 o'clock at the Baker home. They drove first to Sarona and from there to Rice Lake which is 14 miles southeast of Sarona. On the way each drank one can of beer from a six-pack in Zaloudek's car. They spent their time at Rice Lake at a tavern where each had 10 seven-ounce glasses of beer. They remained at the tavern from approximately 10 p. m. until 1 a. m. and then drove back to Sarona. At one point between Rice Lake and Sarona, Zaloudek drove at 70 miles per hour and Baker protested. At Sarona they went to a restaurant where each had a ham-

burger. Their waitress was Betty Kaiser. Two other patrons, Rudolph Richter and Lawrence Wenzel, were in this restaurant at the time. Miss Kaiser, Richter, and Wenzel all testified that they talked with Baker and Zaloudek and that both spoke normally and clearly. Wenzel, who had known Zaloudek prior to the accident, stated that Zaloudek walked no differently that evening than he normally did. Baker and Zaloudek left the restaurant shortly before 2 a. m. Baker testified that when the car approached the intersection with Highway 53, he did not look to the left, or north, and never saw the truck or its headlights. Baker relied on Zaloudek to look to the left while he looked to the right and then straight ahead. As he looked ahead he saw a flash of light, and then the collision occurred.

Prior to our decision in *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14, the conduct of a guest in riding with a host, whom, it was contended, the guest knew had indulged in intoxicating beverages to an extent likely to impair his ability to properly operate his automobile, was customarily submitted to the jury as assumption of risk rather than contributory negligence. *Topel v. Correz* (1958), 3 Wis. (2d) 495, 498, 89 N. W. (2d) 295; *Vandenack v. Crosby* (1957), 275 Wis. 421, 435, 82 N. W. (2d) 307; *Frey v. Dick* (1956), 273 Wis. 1, 9, 76 N. W. (2d) 716, 77 N. W. (2d) 609.[2] Now, subsequent to *McConville, supra,*

---

[2] Professor Richard V. Campbell in his recent article, Wisconsin Law Governing Automobile Accidents—Part II, 1962 Wisconsin Law Review, 557, 561, states that the defense of contributory negligence has in no way been altered by abolishing the defense of assumption of risk in the *McConville Case.* This is because the guest, who encounters an unreasonable risk by riding with a host under circumstances where a reasonably prudent man would not do so, "has always been negligent." While this statement may be theoretically true, it does not accurately reflect trial court practice prior to our decision in that case. This is because trial courts, in the vast majority of cases prior to that decision, submitted this type of con-

the jury considers such conduct of a guest in a question phrased in terms of the guest's possible negligence as was done under the instant special verdict. A jury issue was presented as to Baker's possible negligence for his own safety in riding with Zaloudek on the night of the accident, in view of the latter's drinking of beer. Three witnesses, who conversed with Zaloudek at the restaurant shortly before the accident, all testified that his conduct appeared to be normal. We cannot hold that Zaloudek's drinking of one can and 10 small glasses of beer over a four and a half-hour period prior to 1 a. m. to Baker's knowledge rendered Baker negligent as a matter of law in riding with Zaloudek at 2 a. m. As this court remarked in *Vandenack v. Crosby, supra* (p. 435):

"It is common knowledge that the consumption of alcoholic beverages does have a tendency to dull the senses of perception, although the quantity of alcohol sufficient to produce such result in one individual may have no apparent effect on another."

With respect to Baker's possible negligence as to lookout, the evidence again made this an issue of fact for the jury and not one of law for the court. A building at the northwest corner of the intersection obstructed the view to the north of the two occupants of the Zaloudek car until the car was fairly close to the intersection. Baker relied upon Zaloudek to look to the left, or north, while he first looked to the south and then straight ahead. A guest is not held to the same degree of care with respect to lookout as is the driver. *Vandenack v. Crosby, supra* (p. 434); *Krause v.*

duct to the jury as assumption of risk alone and not also as contributory negligence. Because of this practice, the concurring opinion by Mr. Justice FAIRCHILD and the writer in *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278, pointed out that much conduct of guests, which was typically treated as assumption of risk, ought to be treated as contributory negligence subject to the comparative-negligence statute.

*Hall* (1928), 195 Wis. 565, 569, 570, 217 N. W. 290. A jury would be entitled to conclude that a guest seated to the right of the driver is not negligent if he relies upon the driver to look to the left, as the car approaches a blind intersection, while the guest looks to the right.

*New Trial in the Interest of Justice.*

In support of its contention that this court should grant a new trial in the interest of justice under sec. 251.09, Stats., appellant cites the following statement made by the learned trial judge in his memorandum decision on motions after verdict:

"However, we are not pleased with the verdict of the jury. Here are two young men who spent an evening drinking. They admitted they had nine or 10 beers; and that they were out from 9 to 2 in the morning, but there is no evidence that they were intoxicated or that their drinking influenced Zaloudek in the operation of the car. There were people from the restaurant nearby who stated they were there in their restaurant earlier in the evening or at about the time of the accident and that they were perfectly normal and were not intoxicated. However, one cannot help but wonder if they admitted nine or 10 beers, they probably had more, although there is nothing in the evidence to sustain it. The net result of this is that two young men go out drinking, there is an accident, a truck driver who was in no way to blame and the father of children, was killed and one of the two young men is killed through his own negligence in part and the jury commends the plaintiff for his part in the affair by giving him some twelve or thirteen thousand dollars."

One of appellant's alternative motions after verdict was for a new trial in the interest of justice. The trial judge denied this motion in spite of his expressed displeasure with the verdict because it absolved plaintiff Ronald Baker of negligence. In such situations, where the trial court has con-

sidered the advisability of granting a new trial and concluded that it should not be granted, this court is ordinarily inclined to defer to this decision of the trial court. We perceive no compelling reason why we should not do so in this case.

*By the Court.*—Judgment affirmed.