## Harkins *v.* Somerset Bus Co., Appellant.

Argued April 21, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. Earl Ogle, Jr.*, for appellant.—Appellee failed to prove the absence of proper lights on the rear of the bus: Ely v. Ry., 158 Pa. 233.

Negligence cannot be inferred merely because appellant's bus was parked on the highway.

Negligence cannot be inferred because appellant's bus was parked on the curve in question.

Indisputable physical conditions and uncontradicted testimony negative an inference that the bus occupied a dangerous position on a curve in the highway: Carlo v. R. R., 293 Pa. 343.

The question of proximate cause is for the court: Hoffman v. McKeesport, 303 Pa. 548; Stone v. Phila., 302 Pa. 340; Bruggeman v. York, 259 Pa. 94.

*J. M. Bennett*, of *Weimer & Bennett*, for appellee.— Primarily, appellee contends that the Supreme Court should not conclude that Howard was negligent as a matter of law. The facts are plainly disputed and under such circumstances Howard's conduct was entirely a question of fact for the jury: Cormican v. Menke, 306 Pa. 156; Shellenberger v. Transportation Co., 303 Pa. 122; Mars v. Transit Co., 303 Pa. 80; Galliano v. Penn Electric, 303 Pa. 498; Mason v. Lavine, 302 Pa. 472.

The question of proximate cause was properly submitted to the jury in the case at bar and seems to be supported by the opinion of the Supreme Court in the following cases: Stemmler v. Pittsburgh, 287 Pa. 365; Stone v. Phila., 302 Pa. 340; Riff v. Ry., 298 Pa. 256.

OPINION BY MR. JUSTICE MAXEY, May 26, 1932:

This case grows out of a rear-end collision at night between a stalled motor bus on its proper side of an 18-foot highway leading from Johnstown to Somerset and a motor vehicle traveling about 35 to 45 miles an hour. Plain-

tiff's son, aged 22 years, was a guest in this latter vehicle and in the collision he received fatal injuries. The negligence pleaded was: (1) The stopping of the bus on the highway in the lane of traffic, (2) Permitting it to remain there on a curve without warning to vehicles approaching from the rear, (3) Failure to have proper signal lights on the rear.

The jury found a verdict for the plaintiff in the sum of $5,378.90. Motion for judgment n. o. v. was refused.

About 9:50 p. m., the fuel pump of defendant's bus failed to function and the bus stopped on a frequently traveled road in a wooded region. The driver stated he "pulled it seven or eight feet with power from the starter" and got the two right wheels of the bus two feet off the edge of the concrete of the highway. He said three red lights were burning at the rear of the bus. He spent about ten minutes finding out what the trouble was and a motorist then took him to a place where he could summon aid by telephone from Somerset, 25 miles away. He testified the bus was stalled from fifty minutes to an hour before the collision. A passenger in the bus testified that the bus was stalled approximately an hour and during that period 125 to 150 cars passed that point, counting all the cars going each way. The bus was parked on a 10-degree curve, 333 feet long. It was on an up-grade of 1½%.

The driver of the car in which plaintiff's son was riding at the time of the collision testified that he couldn't see the bus until he was "right on top of it." He said one had to be "right on the bend or almost around" before one could see anything, that "there was a dim light in the bus; it looked like a light in a house a far distance away." He also testified that all four wheels of the bus were on the pavement. When this witness was asked why his own lights didn't reveal the bus before he struck it, he replied: "It was right on a curve; my lights didn't show on the bus until I was right against it, and there was no lights on the bus and only a small light in the

bus." He said there was room enough on the right of the bus for him to have passed on that side "if he had known of it," but in order to do this he would have had to leave the road. He couldn't pass the bus on its left because of an on-coming car. He estimated the speed of his car at about 35 miles an hour. Other witnesses estimated the speed to be 45 miles an hour.

The appellant maintains the proposition that negligence cannot be inferred because its bus was parked on a highway even though the highway was curved ten degrees at the point of parking.

Appellee's case was not predicated on appellant's mere parking of its bus on the curve of the highway but in permitting it to remain there without warning to vehicles approaching from the rear. That the parking at night of motor vehicles on frequently traveled highways unlighted except by passing automobiles is followed from time to time by collisions with such parked cars, is a matter of general knowledge. Because of the fact that such collisions are always attended with circumstances peculiar to the individual accident, it is impossible to lay down any fixed rule which will infallibly determine in every case whether a rear-end collision on a highway at night is due to negligence on the part of the person in charge of the parked vehicle or on the part of the person in charge of the moving vehicle or to the negligence of both. Negligence being want of care under the circumstances and these in each collision being different usually from those in any other collision, and witnesses to the same accident differing as to just what the circumstances were, such cases usually present issues of fact for a jury's determination.

It is true that subsection c of section 1019 of the Vehicle Code of May 1, 1929, P. L. 905, at 983 provides: "The provisions of this section [restricting parking] shall not apply to the driver of any vehicle which is disabled while on the pave or improved or main traveled portion of a highway, in such manner and to such extent

that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

This very mandate of the law requires the finding of factual answers to these questions before this subsection c is applicable: (1) Was the vehicle disabled? (2) Was it disabled in such manner and to such extent that it was impossible to avoid stopping and temporarily leaving such vehicle in such position? Closely related on these questions is the further question: Was the car left on the highway for such an unreasonable and unnecessary length of time as to exceed the privilege of "temporary parking?" In the case before us, no one disputes that the vehicle was disabled but there was a dispute as to the necessity of leaving the vehicle in the position in which it was left and for the length of time it was left there.

The danger of a parked motor vehicle on a highway at night, particularly on a curve, being obvious to the man in charge of it, a due consideration for the well-being and safety of others should prompt him to move it out of the path of traffic at the earliest possible moment and until it was so moved to employ every means available to him to warn on-coming traffic. Whether or not defendant's servant did this was a question of fact for the jury. A state highway patrolman testified that if the bus had been moved forward off the curve on the straight-away, the situation would not have been so dangerous. While the distance the bus should have been moved to make the situation less dangerous is not testified to, it is a fair inference from the evidence, including the exhibit containing a view of the scene of the accident, that the bus if moved a short distance would have been less of a menace to on-coming traffic. Whether the bus could have been moved by its own battery power was a disputed question of fact. One witness testified that "if the starter had enough juice to illuminate all the lights, the interior lights, he would have been able to move that truck off the road, unless the gears were

broken in the rear end." This same witness testified that "a little further down the road he [the bus driver] could have gotten completely off the road." Whether the bus driver did all that due care required to warn on-coming traffic that he was stalled on the highway was also a disputed question of fact. It is true that the evidence adduced by the defendant to the effect that the stalled bus had three red lights in the rear, there being two marker lights in the upper corners and the tail light at the lower left-hand corner, was convincing and was contradicted only by the operator of the automobile which crashed into the bus, who said there was no light in the rear, and the occupants of the automobile, who gave similar testimony but who admitted they were not particularly observant at the time. However, when a motor bus is stalled at night for nearly an hour on a highway, and particularly at a bend in the road, it is the driver's duty to use due care under the circumstances in getting that bus with reasonable promptness out of the way of oncoming traffic or at least in getting it to a point where it will be less of a menace to the traffic and to give such warning to the traffic as is reasonably required, for it is a matter of common knowledge, particularly to drivers of motor vehicles, that cars travel on concrete country roads, as this road was, at speeds of upward of 40 miles an hour or 58⅔ feet a second.

Whether the driver of this stalled bus showed due care under the attendant circumstances, whether the evidence supported the averment that defendant's servant permitted the bus to remain where it was without warning (i. e., adequate warning) to vehicles approaching from the rear, were questions of fact for the jury. We agree with the court below that "due care and respect for the rights of others would have required that it [the bus] be moved out of this dangerous position on a turn on the highway at the earliest possible moment. The place where the bus met difficulty was only twenty minutes from the center of the City of Johnstown, at which place

are located wrecking and repair stations in numbers, where assistance might have been obtained, but instead defendant's employee sent twenty-five miles away to Somerset for assistance and in the meantime made no effort to get this dangerous obstruction out of the way of traffic." The appellant replies to this by saying that its servant did move the bus out of its dangerous position at the earliest possible moment and that he did make an effort to get this dangerous obstruction out of the way of traffic, but these replies raise the very questions of fact which the jury determined.

While the facts in this case would warrant a finding of negligence against Howard, the driver of the automobile which crashed into the parked bus, that fact would not bar a recovery in this case because the negligence of Howard could not be imputed to the guest in the car for whose death the plaintiff sought recovery: Rodgers v. Saxton, 305 Pa. 479.

In Galliano v. East Penn Electric Co., 303 Pa. 498, this court held that where a guest in an automobile sues a street car company for injuries sustained in a collision between the street car and the automobile, the negligence of the driver of the automobile would not bar recovery unless his negligence was the sole cause of the injuries to plaintiff. In the case before us the evidence warranted the finding that the injuries received by the deceased passenger in the automobile, resulted from the negligence of the defendant's servant as well as from the negligence of the driver of the automobile.

The motion for judgment n. o. v. was properly refused.

The judgment is affirmed.

Justices SCHAFFER and DREW dissented.