Henry *v.* S. Liebovitz & Sons, Inc., Appellant.

Argued May 23, 1933. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*S. S. Herman,* of *Herman & Harris,* with him *Culbertson & Stuckenrath,* for appellant.

*Harry L. Siegel,* for appellee.

OPINION BY MR. JUSTICE LINN, June 30, 1933:

Defendant appeals from judgment for plaintiff for the death of her son, killed in a motor accident. As a new

trial must be granted, we shall not discuss appellant's contention that its motion for judgment n. o. v. should have been allowed for want of negligence and because decedent's negligence contributed. We are satisfied that, on the record presented, those questions were for the jury. But there was harmful error in not refusing plaintiff's first point for charge. We shall refer only to evidence necessary to a consideration of that question.

Between ten and eleven o'clock on a dark, cloudy night in January, 1930, defendant's truck or van, in charge of a driver and a helper, while traveling westward on State Highway Route No. 5, between Lewistown and Huntingdon, was stopped by a man whose car was off the road on the same side on which the truck approached, and were asked to tow his car back on the road. The macadam surface of the road was 18 feet wide. With a chain, "8 to 10 feet long," taken from the tailboard of the truck, a coupling was made to the stranded car for the purpose of towing it. The truck was from 27 to 30 feet long. Its two headlights and two green lights on the top were lit. In towing the car forward, the truck moved diagonally across the highway, occupying, according to the plaintiff's witnesses, all but 2½ feet of the macadam surface, and, according to the evidence of witnesses called by defendant, leaving at least seven feet of the macadam surface clear for passing traffic. After making that diagonal movement in bringing the car back on the road, and while in the act of detaching the chain, the men in charge of the truck heard the noise of a car approaching from the opposite direction. In this car, plaintiff was riding as a guest. The truck driver rushed forward and attempted to warn the approaching car by waving a flashlight, and by passing his hand across the headlight of the truck. The warnings were ineffective; the car got off the highway into a ditch (described as six inches deep) and finally struck a telegraph pole with serious results to the occupants. Witnesses testified that the entire operation of the defendant occupied from two

to three minutes. Though there was evidence of negligence for the jury, plaintiff also requested the court to charge as follows: "1. That if the jury believes from a preponderance of the evidence that the defendant company, through its agents and employees, then and there engaged in the business of the defendant and within the scope of their employment, parked, or left standing, the said moving van on the said highway so as not to leave a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the said highway opposite the said moving van, then such action constituted a violation of section 1019 of the Motor Vehicle Code of 1929, providing, inter alia, as follows: 'Provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway, unless a clear and unobstructed width of not less than fifteen (15) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon.' And such action constitutes evidence of negligence on the part of the defendant."

Instead of simply refusing the point, the learned trial judge answered it as follows: "This point is refused as stated, with the qualification that if you find that the drivers of this truck violated the act of assembly quoted, that violation should be considered by you as one of the elements of the defendant's negligence."

The statute has no application to the record because what was done cannot be considered a violation of it. Section 1019, P. L. 982, of the Motor Vehicle Code, 1929, P. L. 905, is as follows: "Stopping on Highway—(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway: Provided, In no event shall any person park or leave standing any vehicle, whether attended or unattended,

upon any highway, unless a clear and unobstructed width of not less than fifteen (15) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred (200) feet in each direction upon said highway: And further provided, No person shall park or stand any vehicle whether attended or unattended, in any no parking area, where 'No Parking' signs have been erected in accordance with the provisions of section one thousand one hundred and thirteen (1113) of this act.

"(b)—[Not now material.]

"(c)—The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." A penalty is provided for violating the provisions of subsection (a). There was a clear view of this truck for more than 600 feet.

Only a part of section 1019 has heretofore come up for consideration. In Harkins v. Somerset Bus Co., 308 Pa. 109, 162 A. 163, we considered subsection (c) and held that a disabled motor bus left standing on the highway was within the exception of that subsection. We also held that it was for the jury to say, in the circumstances of that case, whether the operator of the motor bus had acted with due care "in getting that bus with reasonable promptness out of the way of oncoming traffic or at least in getting it to a point where it will be less of a menace to the traffic and to give such warning to the traffic as is reasonably required......" Subsection (c) has importance, in dealing with the general scope of section 1019, as specific legislative recognition,—necessary in regulating highway traffic—of unavoidable temporary obstruction of the highway.

While the stranded car was off the highway and, so located, was not a direct menace to traffic, it was lawful

for the owner to attempt to get it back where he could pursue his journey, and it was also lawful for defendant's employees to assist in that operation, of course exercising the proper measure of care. If, now, that operation (with a momentary stop of sufficient time necessary to detach the chain, preparatory to straightening out on its proper side of the highway) required the temporary use of more than half the highway during the forward movement, it cannot be said that such operation was within the prohibition of subsection (a). It is not even suggested that an unreasonably long time was consumed in what was done. While the macadamized portion of this road was only 18 feet wide, on many of our highways, the "paved, improved or main traveled portion" is less than 18 feet. The legislature, of course, knew this. It was also cognizant of the many necessary uses for purposes of travel to which highways have been put from time immemorial, and for which they must still be available as contingencies of lawful travel require. The legislature cannot have intended, by the words used, to confine the necessary movement of vehicles, such, for example, as that of the assisting truck in the circumstances described, to three feet or less, of the main traveled portion of a road, yet to that conclusion plaintiff's argument inevitably leads. Section 1019 is part of the regulation of parking (defined in section 101) and prohibits parking and "standing" vehicles "attended or unattended" such as one frequently sees in circumstances which cannot be said to be legitimate or necessary uses of the highway for purposes of travel. In no reasonable understanding of the words, in their relation to the subject of legislation, can we hold that it was intended to prohibit the reasonably necessary backward or forward movement of duly licensed motor vehicles engaged in an ordinary use of the highway, with due allowance, of course, for time required in changing direction.

Judgment reversed and new trial awarded.