## OKLAHOMA POWER & WATER CO. v. HOWELL.

No. 33292.   May 31, 1949.

Rehearing Denied July 12, 1949.

*207 P. 2d 937.*

Doerner, Rinehart & Stuart, Harry D. Moreland, and Jack E. Campbell, all of Tulsa, for plaintiff in error.

Chas. R. Gray and W. N. Palmer, both of Pawhuska, for defendant in error.

LUTTRELL, J.   This action was brought by plaintiff, E. L. Howell, against the defendant, Oklahoma Power & Water Company, to recover damages to his truck arising from a collision between the truck and two trucks belonging to defendant. The trial court overruled defendant's motion for a directed verdict, and submitted the case to a jury, which returned a verdict for plaintiff. Defendant appeals.

There is no substantial dispute as to the facts. From the evidence it appears that the collision occurred at about 4:30 in the afternoon of January 25, 1946, on State Highway No. 23, a short distance northeast of the town of Barnsdall in Osage county. Plaintiff's truck, driven by his son Preston, had delivered a load of feed near Bartlesville and was returning to Pawhuska, driving in a southwesterly direction. In the truck with Preston was his wife and his younger brother, a boy 15 years of age. One of the trucks of defendant which was involved in the collision was stuck in a ditch at the side of the road, which at that point was paved with black top some 18 feet wide, and the other truck of defendant was attempting to pull defendant's truck out of the ditch, it being impossible to extricate it in any other manner. The second truck had a winch line attached to the front axle of the first truck, whose front wheels were on the highway about two feet from the edge thereof, and apparently at right angles to the highway. The second truck was headed

north and west, and with the first truck and the winch line between them completely obstructed the highway at that point. Preston Howell, driver of plaintiff's truck, testified that he first saw the two trucks on the highway a short time after he left the crest of the hill some 3,000 feet, or three-eighths of a mile, from defendant's trucks, but from that distance he could not tell just what they were doing. He testified that shortly after he saw the trucks he attempted to reduce the speed of his truck by shifting to a lower gear but was unable to do so, and that he then attempted unsuccessfully to check the speed of his truck by the use of both the foot brake and the hand brake, but without success. It appeared that at some time not known to Preston or the other occupants of the truck one of the rear axles of the truck had broken, so that neither the gears nor the brakes could be used to slow its forward progress. Preston Howell testified that he rounded a curve in the road some 300 feet from defendant's trucks and then for the first time perceived that the road was completely obstructed. He testified that if he had had the use of either his brakes or gears he could have stopped his truck after he rounded the curve and saw that the road was completely obstructed. His testimony on that point is as follows:

"Q. Now, if you had good brakes at the time you started to change gears and they were in perfect working condition to have brakes and the emergency brake and your gears were in good condition, you, of course, would never have hit these trucks, would you? A. Oh, I guess not. Q. And the reason you hit the trucks was because you didn't have any way of stopping your truck? A. There was no way of stopping it. Q. And but for the fact your brakes and gears went out, you could have stopped your car? A. Yes. Q. And would have? A. Yes, you are darned right I would."

He further testified that the ditches on either side of the road were so deep that he was afraid to run the truck into them, fearing that it would overturn and injure his wife and brother. He attempted to go between the two trucks of defendant, striking both of them, and doing considerable damage to his father's truck. He admitted that one of the defendant's employees ran up the road waving his arms and yelling at him to stop, and that he yelled to this employee to get out of the road or he would be run over. He and his wife and younger brother testified that this man never got more than ten or fifteen feet from the trucks, but the man himself and other witnesses for defendant, one of whom was disinterested, testified that the man ran up the road some 50 steps or more waving his hands. The day was clear and Preston's view of the trucks, according to the testimony, was unobstructed at all times from the top of the hill to the point of the collision.

Plaintiff contends that defendant, by so placing its trucks on the highway as to entirely obstruct traffic, was guilty of a violation of Rule 10 of the Road, 69 O.S. 1941 §583, subdivision 10, and that this violation was negligence per se. Rule 10 reads as follows:

"Rule 10. Be it further provided that when a motor vehicle is brought to a stop on a hard-surfaced highway the left side of the motor vehicle must be to the right of the center of said highway at least three feet."

His contention is, briefly stated, that any obstruction of the highway by the stopping of automobiles or trucks thereon for any purpose is a violation of that statute.

We are unable to agree with this contention. We have not heretofore passed upon the application of that statute to a state of facts similar to that in the instant case, but we think that the use of a highway by a wrecker or rescue truck, in order to extricate a stuck or disabled truck and help it regain the highway and proceed, or be towed to a place where it may be repaired, is not forbidden by the statute. Plaintiff does not cite any case so holding,

and we have been unable to find any. On the contrary, the courts of several states, in construing similar statutes, have held that the temporary blocking of the highway by a wrecking truck attempting to pull a stranded or disabled car back on the highway is not violative of such statute. Thus in Henry v. Liebovitz & Sons, Inc., 312 Pa. 397, 167 Atl. 304, the Supreme Court of Pennsylvania, construing a statute which provided that in no event should any person park or leave standing any vehicle, either attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite the standing vehicle should be left free for the passage of other vehicles, held that the temporary obstruction of the highway by a towing truck, which was attempting to pull a disabled car back on the road by using a chain attached to such car, was not within the prohibition of the statute. In that case the court said:

"While the stranded car was off the highway and, so located, was not a direct menace to traffic, it was lawful for the owner to attempt to get it back where he could pursue his journey, and it was also lawful for defendant's employees to assist in that operation, of course exercising the proper measure of care. If, now, that operation (with a momentary stop of sufficient time necessary to detach the chain, preparatory to straightening out on its proper side of the highway) required the temporary use of more than half the highway during the forward movement, it cannot be said that such operation was within the prohibition of subsection (a)."

Wisconsin had a statute somewhat similar to our statute and the Pennsylvania statute above referred to. In Kastler v. Tures, 191 Wis. 120, 210 N.W. 415, which case involved an accident between an automobile and a wrecker or service truck, which was attempting to pull a disabled automobile back on the highway, the court said:

"The statutes provide:

" '85.02. Except when making absolutely necessary repairs, no person shall park or leave any vehicle along, upon, or within the limits of any public highway in such manner as to interfere with the free passage of vehicles over and along such highway. In all cases there shall be left a free and usable passageway of at least eighteen feet so that vehicles going in opposite directions may pass without interference from any standing vehicle."

"It is claimed by the defendant that this statute applies to the situation before us. We do not think so. This statute applies to parking cars in the highway, an expression well understood to mean the voluntary act of leaving a car on the highway when not in use. This was not such a case. Here there had been an accident. The wrecked car was in the ditch, with passengers in it, and the plaintiff was making a proper and necessary use of the highway under an emergency."

To the same effect is Cooper v. Teter, 123 W. Va. 372, 15 S.E. 2d 152. In that case the court said:

"Code, 17-8-2, and 17-19-9, and sections 22 to 25, both inclusive, of Part II of Rule 57 of Safety Regulations promulgated by the State Road Commission, relating to the parking of motor vehicles on highways and the care of wrecked motor vehicles thereon, are not controlling in the case of a truck which is being used to retrieve an automobile which has gone off a public highway."

Other cases holding that a wrecker blocking, or partly blocking the highway in an effort to extricate a disabled car is making a proper and necessary use of the highway, are McNair v. Berger, 92 Mont. 441, 15 P. 2d 834, and Bowmaster v. William H. DePree Co., 258 Mich. 538, 242 N.W. 744. And this is the general rule. 42 C.J. p. 1041, §791; Berry, Automobiles, vol. 3, p. 140, §372.

It is our view that by our statute above quoted the Legislature did not intend to prohibit the rescue of disabled or stalled vehicles along a public highway, but had reference rather to

the stopping or parking of vehicles upon the highway for their owners' convenience or for some reason not due to necessity. It did not intend to impose a liability upon one rightfully using the highway in an effort to extricate a disabled or stalled car, where such effort was necessary to extricate such vehicle, and no other negligence was shown.

The evidence in the instant case clearly discloses that the accident was unavoidable, and that it was due, not to the obstruction of the highway by defendant's trucks, but by the breaking of the axle on plaintiff's truck, which rendered it impossible to slow its speed, although the driver had ample time to do so. We are unable to agree with the statement in plaintiff's brief that defendant should have anticipated that a defective car, or one not under control, might approach the point where the highway was blocked, and that injury might result therefrom.

Our Motor Vehicle Law, 47 O.S. 1941 §92, provides that persons driving vehicles upon a highway shall not drive at a speed greater than will permit them to bring said vehicle to a stop within the assured clear distance ahead. Defendant was not called upon to anticipate that an approaching driver, either by reason of his own negligence, or because of some defect in his vehicle, would violate that law. We hold that the obstructing of the highway by defendant's trucks under the conditions above stated was not violative of Rule 10 of the Road above set forth, and did not in itself constitute negligence.

Plaintiff's next contention is that defendant was negligent in failing to put out red flags as provided by the regulations of the public safety commission, which requires red flags to be placed upon the highway in the daytime, and flares to be placed thereon at night, whenever a vehicle is disabled upon the traveled portion thereof or shoulder next thereto, or when any motor vehicle shall come to rest on or beside the pavement or highway.

In his brief plaintiff tacitly admits that the evidence sufficiently shows that the placing of such flags would not have afforded any protection to his truck under the circumstances, and the testimony of his driver above stated further shows that the driver was apprised of the condition of the highway in sufficient time to have stopped his truck had the brakes or gears been in good working order. In fact, the only suggestion in the testimony that the placing of such flags might have been of benefit to plaintiff's driver was the testimony of the 15 year old brother of the driver, who testified that if defendant had had a flagman out the driver might have put the truck in a ditch "away up there". The testimony does not indicate that there was any point along the highway from the crest of the hill to the point of the collision where Preston Howell could have stopped the truck by driving into the ditch, or into any level space along the road, and Preston himself testified that all the way down the hill he was paying attention only to his gears and brakes in an effort to make them work.

In Guthrie v. City of Henryetta, 177 Okla. 122, 57 P. 2d 1165, we said that one of the elements of actionable negligence was "injury to the plaintiff proximately resulting from such negligence to perform that duty," referring to the existence of a duty on the part of defendant to protect the plaintiff from injury. It is clear from the evidence in this case that if the duty rested upon defendant to put out warning flags, the failure to perform that duty did not result in injury to plaintiff's truck, since the flags would have given no warning to plaintiff's driver of any danger of which he was not already apprised. Nor is there any showing that the placing of flags would have apprised him of the fact that the road was completely blocked, since, under the regulation relied upon by plaintiff, the placing of such flags did not necessarily indicate that the road was completely blocked. We have several times held that failure to give a warning was not negligence

where the plaintiff was sufficiently apprised of the danger. Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 P. 250; St. Louis, I. M. & S. R. Co. v. Gibson, 48 Okla. 553, 150 P. 465. The evidence is wholly insufficient to show that the damages sustained by plaintiff's truck were attributable to the failure of defendant to comply with the above stated regulation.

Plaintiff also asserts that the action of defendant in temporarily blocking the highway violated 50 O.S. 1941 §1, defining nuisances, and 69 O.S. 1941 §4, which prohibits the erection of poles, wires, conduits and equipment by a public service company in such manner as to incommode or endanger the public in the use of its roads, highways and thoroughfares. Examination of those statutes convinces us that they have no bearing upon the questions involved in this case.

We think the collision between the truck of plaintiff and those of defendant was an unavoidable accident caused by the untimely breaking of the axle on plaintiff's truck, which prevented the proper operation thereof, and that the damages so incurred by plaintiff were in no wise attributable to any negligence or lack of due care on the part of defendant. The trial court should have sustained defendant's motion for a directed verdict.

Reversed, with directions to render judgment for defendant.

DAVISON, C.J., and GIBSON, HALLEY, JOHNSON, and O'NEAL, JJ., concur.