Gene C. CABE, Plaintiff in Error,

v.

James C. LANGLEY, Jr., a minor, by and through his guardian, James C. Langley, Sr., Defendant in Error.

No. 38370.

Supreme Court of Oklahoma.

Nov. 10, 1959.

As Corrected Jan. 6, 1960.

Rehearing Denied Jan. 12, 1960.

Rucker, Tabor & Cox, Joseph A. Sharp, Tulsa, for plaintiff in error.

Lloyd G. Larkin, Wheeler & Wheeler, John M. Wheeler, John Wheeler, Jr., Robert L. Wheeler, Tulsa, for defendant in error.

BERRY, Justice.

In this action defendant in error, James C. Langley, Jr., hereafter referred to as plaintiff, sought to recover damages from plaintiff in error, Gene C. Cabe, hereafter referred to as defendant, for personal injuries sustained in the hereafter-referred-to accident.

From a jury verdict in defendant's favor, plaintiff filed a motion for new trial which was sustained upon the grounds that it was prejudicial error to instruct the jury upon "unavoidable accident" and that because of said instruction plaintiff did not have a fair trial. From order sustaining plaintiff's motion for new trial, defendant perfected this appeal.

The defendant contends that there was competent evidence showing that the accident in controversy was an unavoidable accident and for said reason the court properly instructed the jury in substance that if the accident was found to be unavoidable, their verdict should be for the defendant; that in sustaining the plaintiff's motion for new trial the trial court abused its discretion and acted in an arbitrary and capricious manner. Defendant's claim to error is only well founded if there was competent evidence showing that the accident was in fact an unavoidable accident. The evidence bearing on the foregoing issue is in substance as follows:

On September 21, 1956, plaintiff who was then 13 years of age had an early dinner at the home of defendant who was then 16 years or more of age. Plaintiff and defendant, who resided at the homes of their respective parents in Tulsa, were cousins.

Round robin football games were scheduled between several Tulsa high school teams the evening of the referred-to date. The high school band that plaintiff was a member of was scheduled to play at the games. In changing into his band uniform at defendant's home, plaintiff was unable to find the shoes that he wore with his band uniform. Defendant volunteered to drive plaintiff to plaintiff's home where the shoes were thought to be. En route to plaintiff's home defendant picked up two of his friends. A search of plaintiff's home failed to reveal the shoes and, believing that the shoes were in fact at defendant's home, the four youths started to make the return trip to defendant's home in defendant's automobile over the route followed in driving to plaintiff's home.

At a point approximately 1,400 feet north of the 51st Street bypass in Tulsa, a levee extends in a general westerly direction across an asphalt county highway which extends north and south. This highway is commonly referred to as S. Elwood. The top of the levee at said point is approximately 4 to 6 feet higher than the highway at a point on the highway approximately 100 feet either side the top of the levee. On date of accident two signs with the word "Slow" painted thereon in large letters stood on either side of the levee and highway at a distance of approximately 100 yards from the top of the levee.

On the return trip from plaintiff's home, defendant was driving his automobile in a southerly direction over S. Elwood. Upon reaching the top of the levee all four wheels of the automobile left the highway. The front wheels came down first approximately 45 feet south of the top of the levee at which point the front under-portion of the automobile scooped out asphalt in the shape of the letter "H" to a depth of approximately three inches. The outside lines of the depression were over three feet long. The front wheels of the auto-

mobile at said point again left the pavement and said wheels did not return to the pavement until the automobile was approximately 70 feet south of the top of the levee. From this point the automobile traveled south on all four wheels to a point approximately 291 feet south of the top of the levee where it came to a stop. Witnesses placed speed of the automobile at the time it reached the top of the levee at from 40 to 80 miles per hour.

At the time the accident occurred the weather was clear and the highway was dry. There was nothing to obstruct defendant's view of the levee or the "Slow" signs erected on either side of the levee and highway. One witness testified that in approaching the levee from the north there was "some degree of optical illusion". The quoted phrase was not explained and there is in fact no evidence in the record tending to show that the levee and "Slow" signs were not clearly visible to any one traveling S. Elwood in either direction. Photographs introduced in evidence show that the levee is clearly discernible to one traveling over S. Elwood for several hundred feet on either side of the levee; two persons in an automobile that defendant passed approximately 150 feet before defendant's automobile reached the top of the levee saw same and the two youths riding in the back seat of defendant's automobile both saw the levee and one of them testified that he cried out a warning before the automobile reached same. The defendant had driven over the levee in driving plaintiff to plaintiff's home not more than 30 minutes before the accident occurred and therefore had knowledge of same. Plaintiff and defendant both testified that they did not notice the levee until the automobile was upon it. Defendant's testimony in this particular is borne out by the fact that he didn't apply his brakes before reaching the top of the levee.

As a result of defendant's automobile violently striking the highway on the south side of the levee, plaintiff, who was riding in the front seat of the automobile, was thrown forward and his face struck the panel of the automobile with such force as to cause damage to his jaw bones and teeth and the loss of teeth. It is for these injuries that he seeks to recover damages from defendant.

■ The first paragraphs of the syllabus in Huey v. Stephens, Okl., 275 P.2d 254, and in Tyree v. Dunn, Okl., 315 P.2d 782, 783, reads as follows:

"An unavoidable accident is one which occurs while all persons concerned were exercising ordinary care, being one not caused by the fault of any of the persons, and if the accident could have been prevented by either person by means suggested by common prudence, it is not deemed unavoidable."

In Wilson v. Roach, 101 Okl. 30, 222 P. 1000, we said in the first paragraph of the syllabus that "An 'unavoidable accident' is a casualty which occurs without negligence of either party, and when all means which common prudence suggests have been used to prevent it", and in Burke Greis Co. v. Ballard, 200 Okl. 341, 193 P.2d 582, 585, we said that "An unavoidable accident is one which could not have been foreseen or prevented."

The accident in the instant case unquestionably resulted from defendant driving his automobile over the levee at an excessive rate of speed. The evidence therefore shows that the accident could have been avoided "by means suggested by common prudence",—reduction of speed of the automobile to point where it could be safely driven over the levee. The defendant says in substance "not so." That his testimony to the effect that he was driving from 40 to 45 miles per hour, therefore, under the maximum speed, permitted by statute; that he didn't see the levee before his automobile was on top of it; that (according to the policeman's testimony, and not defendant's) "some degree of optical illusion" was present, tended to show that he could not have avoided the accident by means suggested by common prudence and the issue

of unavoidable accident was therefore properly submitted to the jury.

 As heretofore pointed out, the referred-to testimony of the police officer is without probative effect. The quoted statement was neither explained nor elaborated upon. Did the illusion cause the levee to appear higher or steeper than it actually was? If an illusion existed why didn't it affect the vision of the passengers in the back seat of the automobile? Defendant's admission that he didn't see the levee is an admission that he failed to exercise common prudence and that he was guilty of negligence. This will be found at pp. 343, 344, 65 C.J.S. Negligence § 4(2) (c):

"When there is a duty to look, a failure to do so constitutes negligence. Likewise, where there is such a duty, mere looking is not sufficient, but a person is guilty of negligence if he does not see what is plainly visible and within the range of vision, or obviously apparent, or observable by due or ordinary, or ordinary and reasonable, care, or if he does not see what, by the proper use of his senses, he might have seen; one may be liable because of what he should have seen as well as for that which he actually saw * *."

 If defendant's testimony that he was driving "between forty and forty-five" at the time of the accident be accepted as true, this would not tend to show that defendant was operating his automobile prudently at the time the accident occurred or tend to show that he was free of negligence. His testimony in the foregoing particulars would establish that an automobile could not be operated from north to south over S. Elwood at point of accident at 40 to 45 miles an hour without risk to the automobile and its passengers.

We are of the opinion that the trial court did not abuse its discretion in granting a new trial because of the error that resulted from instructing the jury on unavoidable accident.

Affirmed.

DAVISON, C. J., and HALLEY, JOHNSON, and IRWIN, JJ., concur.

WILLIAMS, V. C. J., and WELCH, BLACKBIRD, and JACKSON, JJ., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

I respectfully dissent to the opinion of the majority for the reason that, to my notion, it substitutes this court in place of the jury in determining facts.

Plaintiff in error, hereinafter referred to as defendant, pleaded as a defense, that this was an unavoidable accident. To support this contention, he testified that he had never driven over this road except once, and that approximately one-half hour before, and then from the opposite direction; that he was driving at a reasonable speed for the condition of the road and visibility; and that he did not see the rise in the road until he was upon it. Testimony of a highway patrolman who drove over this road quite frequently was that "there was some degree of optical illusion" in approaching this hump from the north. Further, plaintiff's (defendant in error's) photographs of this highway in the vicinity of the accident show that the approaches to this hump are graded and filled; that the ascent and descent over the hump are not steep or abrupt.

Summing up defendant's evidence as to an unavoidable accident, it tended to show: 1. That he was driving at a reasonable rate of speed under the circumstances; 2. that the danger was not apparent until the accident occurred; 3. that he was not negligent; 4. that the accident occurred without fault on his part; and 5. that when the accident did occur there was nothing he could do to avoid it.

The defense of unavoidable accident being pleaded, and the evidence being sufficient to present the issue, the trial court's instruction on such issue was necessary. Tibbets & Pleasant, Inc., v. Benedict, 128 Okl. 106, 261 P. 551. In Pankey v. Public

Service Co., Okl., 288 P.2d 373, 375, we stated:

"Instruction No. 16 dealt with the subject of 'unavoidable accident.' Therein the trial court defined the term and told the jury that neither party to such an accident is liable to the other for damages thereby sustained. Plaintiff's claim that the giving of this instruction was error is based upon the premise, unsupported by citations from the record, that the evidence was insufficient to present such an issue. We do not agree. Upon thoroughly examining the record, we find evidence on behalf of both the plaintiff and defendant, which, if considered together, or as a whole, and believed by the jury, would have supported the conclusion that both the truck and the coupe arrived in the intersection at the same time and that both drivers did what they could to avoid the accident, and that neither was negligent. In view of this, we cannot hold that the trial court should not have given an instruction pertinent to such evidence. It is not the trial court's prerogative, prior to submission of such a cause to the jury, to pass upon issues about which the evidence is equivocal or conflicting, and to determine where the preponderance thereof lies. This is the exclusive prerogative of the jury, and a trial judge never errs in recognizing it as the one here did."

There inheres in the jury's verdict for the defendant a finding that he was not guilty of negligence.

The majority opinion thus determines that there is competent evidence upon which the jury *could* have reached a different verdict, therefore it reverses, in effect, the verdict of the jury. As I view it, the majority has determined as a fact that defendant was not shown to have had an unavoidable accident. Actually the question is not whether there was or was not an unavoidable accident, but whether there was sufficient evidence to require an instruction so the jury might determine whether there was an unavoidable accident. The function of a court of final appeal, in an action of legal cognizance, is to review the proceedings in the lower court for errors of law, and to determine whether the evidence is sufficient to warrant the action of the court and jury. If there is sufficient evidence, without regard to conflicts in the entire evidence, to support the jury's verdict, such verdict should be sustained.

It is for the jury and not this court to determine the facts from all of the evidence introduced.

I therefore dissent.