J. W. JONES, Jr., and Walter J. Leeper, partners, dba Sallisaw Motor Company, Plaintiffs in Error,

v.

Hazel B. FARMER, Defendant in Error.

No. 39284.

Supreme Court of Oklahoma.

Jan. 30, 1962.

Rehearing Denied March 27, 1962.

Frye, Frye & Frye, Sallisaw, Cheek, Cheek & Cheek, Oklahoma City, for plaintiffs in error.

J. Fred Green, Fred D. Green, Robert Bruce Green, Sallisaw, for defendant in error.

BERRY, Justice.

In this action, defendant in error, hereafter referred to as "plaintiff", seeks to recover damages from plaintiffs in error, hereafter referred to as "defendants", for bodily injuries and damages to her automobile sustained as a result of the accident hereafter referred to.

The jury to whom the case was tried, returned a verdict in plaintiff's favor in the amount of $20,000.00. From order of the trial court, denying defendants' motion for new trial, which was directed to judgment on the verdict, defendants perfected this appeal.

Plaintiff's theory and contention is that defendants so used their "wrecker" as to negligently obstruct the highway over which she was traveling and that the damages which she sustained were the proximate cause of their negligence.

Defendants' theory and contention is that in placing the wrecker on or partly across the highway, it was making a necessary and proper use of the highway; that they were not negligent in any particulars; that the proximate cause of the accident was plaintiff's negligence; that the trial court erred in denying their motion for a directed verdict.

The pertinent facts bearing upon the respective contentions of the parties are these:

The accident occurred February 5, 1959, at approximately 3:45 p. m. on a state highway which is paved with asphalt, at a point north of Sallisaw, Oklahoma. At time of accident the sky was overcast and it was then snowing or sleeting. The highway was covered or partly covered with ice and snow.

At approximately 10:30 a. m. on date of accident, a motorist traveling south over the mentioned highway lost control of his automobile (hereafter referred to as "Ford"), upon same passing over a hole in the asphalt. As a result of losing control of the Ford, it overturned and came to rest bottom side up in a ditch to the west of the asphalt near scene of the accident in controversy. Later in the day, defendants were requested to tow the Ford to the garage that they operated in Sallisow. At 3 p. m. defendants directed two of their employees to proceed to point of accident and tow the Ford to the garage.

Defendants' employees testified that the wrecker used in reaching the Ford was equipped with a winch; that a light which flashed was built into the top of the cab; that the rear lights of the wrecker and a front light would flash when turned on; that they realized the hazardous condition of the highway; that upon reaching the Ford, one of them lighted a flare which was placed upon the asphalt at the crest of a steep hill which was approximately 300 feet north of the Ford; that the flare was designed to burn 20 minutes or longer; that in righting the Ford, the wrecker was driven at an angle to the east of the Ford and partly across the asphalt; that no difficulty was experienced in turning the Ford upright; that the wrecker was then driven to a point north of the Ford for the purpose of attaching the towing device; that the Ford was then to the west and off the asphalt but some 18 inches of the wrecker was upon or over the asphalt; that the proper way to begin the towing operations was to place the wrecker "straight in front" of or behind the Ford; that after the towing device was attached, employees heard plaintiff's automobile (a 1957 Mercury) approaching from the north; that the Mercury was traveling at a speed of not less than 60 miles at time it reached crest of the hill; that plaintiff applied brakes to the Mercury, lost control of same and that it came to rest in a ditch to the east of the asphalt about 15 or 20 feet north of wrecker; that the flashing lights

of wrecker were on at all times after wrecker reached the Ford; that the flare was retrieved following the accident in controversy; that at said time it was not burning.

There was testimony on part of disinterested witnesses that a lighted flare was not placed at any point by defendants' employees; that no lights were burning on the wrecker from the time it reached the Ford and occurrence of the accident in controversy. A disinterested witness testified that a lighted flare was placed at the crest of the hill soon after the wrecker arrived; that one of defendants' employees removed the flare prior to plaintiff's reaching said point.

There was also testimony by disinterested witness that in preparing to tow the Ford, the wrecker was placed at an angle to the east of the Ford; that the wrecker at time of accident occupied all of the west portion of the asphalt and that the front end was upon the east portion of the highway; that a south-bound motorist could only pass the wrecker by driving the left wheels of the vehicle upon the east shoulder of the highway.

Plaintiff testified that the speed of the Mercury was between 35 and 40 miles an hour as she approached crest of hill; that the speed was reduced shortly before reaching said point. This testimony was corroborated by testimony of a disinterested witness. Plaintiff testified further that upon reaching crest of hill it appeared to her that the wrecker completely obstructed the highway; that she applied the Mercury's power brakes; that the Mercury turned sideways and slid down the hill, coming to rest in a ditch to the north and east of the wrecker; that as a result of the accident she sustained painful and permanent injuries.

A disinterested witness who was driving a pick-up truck approached the wrecker from the north shortly before occurrence of the accident in controversy. He testified that he was driving 35 to 40 miles an hour upon reaching crest of the hill; that the wrecker obstructed the highway; that upon observing the wrecker, he cautiously applied the pick-up's mechanical brakes; that he was

unable to stop before reaching the wrecker but did slow down sufficiently to drive around the wrecker; that in passing the wrecker it was necessary to drive the left portion of the pick-up off the asphalt.

It is not contended that the Mercury was not in good mechanical condition immediately prior to the accident.

Among the cases cited by defendants in support of their contention that the evidence fails to show negligence on their part is Oklahoma Power & Water Co. v. Howell, 201 Okl. 615, 207 P.2d 937. In that case the plaintiff saw defendant's wrecker which was obstructing the highway when some 3000 feet from same. He was unable to stop his vehicle, however, because one of its axles was broken. It was pointed out that the defective condition of plaintiff's vehicle and not the obstruction created by the wrecker was the cause of the accident. For reasons indicated the case is not in point of fact. As applied to the facts of the instant case, the cited case does no more than sustain the proposition that where necessary a highway may be temporarily obstructed by a wrecker used in assisting a disabled automobile to regain the highway.

Evidence which tends to show that defendants were negligent can be summarized thus: In attaching the towing device and in beginning the towing operations, the wrecker should have been placed immediately in front of or behind the Ford which was off the asphalt (testimony of defendants' employees). If this procedure had been followed, the wrecker would have been off the asphalt at the time plaintiff reached crest of the hill. There was competent evidence showing that the towing operation was conducted by placing the wrecker at an angle on the asphalt to the east of the Ford, thus obstructing the highway. It follows that the jury could properly have concluded that in preparing to tow the Ford, obstruction of the highway by the wrecker was wholly unnecessary; that for said reason the defendants were negligent in obstructing the highway; that statutes pertaining to vehicular travel on highways were therefore

applicable to the wrecker; that obstruction of the highway being unnecessary, defendants should have warned motorists approaching from the north by turning on lights on the wrecker or setting a flare at the top of the hill or otherwise giving a warning. As pointed out, there was competent evidence that no warning of any kind was given. To our way of thinking, the fact that the highway was a well-traveled state highway, the wrecker could not be seen by a south-bound motorist until he was within some 300 feet of the wrecker, the inclement condition of the weather and the hazardous condition of the highway, would justify the jury in concluding that a duty rested upon defendants to warn a motorist approaching from the north and that they were negligent if a warning were not, in fact, given. For reasons stated, we are convinced that there was competent evidence showing negligence on defendants' part.

In summarizing the pertinent facts presented in R & S Auto Service et al. v. McGill, 205 Okl. 495, 238 P.2d 1089, it was stated that "Plaintiff was operating his automobile, which was mechanically in good order, in a lawful and proper manner and could have seen objects in his lights at from 50 to 60 feet. The blockade in the road could not be seen by plaintiff until he reached the crest of the hill, and when he observed the wrecker he applied his brakes and tried to avoid the collision, but was unable to do so. The wrecker was without lights and defendant had failed to put out flares or warning signals to warn other traffic of the blockade in the road, and no attempt was made to warn plaintiff of the danger as he was observed approaching the scene." In sustaining the verdict in plaintiff's favor in the cited case, we quoted from 60 C.J.S. Motor Vehicles § 335, p. 779. The first portion of the quotation reads as follows:

> "'The operator of a standing or parked vehicle which constitutes a source of danger to other users of the highway is generally bound to exercise ordinary or reasonable care to give

adequate warning or notice to approaching traffic of the presence of the standing vehicle, and such duty exists irrespective of the reason for stopping the vehicle on the highway. So the driver of the stopped vehicle must take such precautions as would reasonably be calculated to prevent injury, whether by the use of lights, flags, guards, or other practical means and failure to give such warning may constitute negligence, even in the absence of any specific duty imposed by governmental regulation. * * *'"

The Court of Appeals of Kentucky held in substance in Harry Holder Motor Co. v. Davidson, 243 S.W.2d 926, that a wrecker should not be stopped on traveled portion of highway longer than reasonably necessary and should not occupy more of said portion than is reasonably necessary.

In the first paragraph of the syllabus to Stout v. Rutherford et al., Okl., 341 P.2d 266, this was said:

"The proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred."

■ Defendants contend that the proximate cause of the accident was plaintiff's failure to drive her vehicle in such a careful and prudent speed as would permit her to stop same within the assured clear distance ahead under the conditions that then existed. The matter of whether plaintiff was negligent in this or in other particulars and whether her negligence was the proximate cause of the accident, as was the matter of whether defendants were negligent and whether their negligence was the proximate cause of the accident, were questions of fact for the jury. The jury having resolved said questions in plaintiff's favor, it is not our privilege to overturn the judgment on the verdict unless errors at law are shown.

■■ Defendants contend that the trial court erred in giving certain instructions. The record reflects that no exceptions were noted on the instructions given nor was the giving of the instructions assigned as error in defendants' motion for new trial. Defendants point to fact that the record discloses that upon settling the casemade the trial court found that defendants in fact excepted to (but did not note) exceptions to all instructions that were given.

It is provided in 12 O.S.1951 § 578, that "A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write at the close of each instruction 'Refused and excepted to,' or, 'Given and excepted to,' which shall be signed by the judge." The provisions of this section have been held to be mandatory. See Louis Berkman Co. v. Unger Metals Corp., 190 Okl. 101, 121 P.2d 606, and cited cases. In Oklahoma City Tent & Awning Co. v. C. M. Mays Lumber Co. et al., 111 Okl. 263, 239 P. 576, it was held that a general exception to instructions given and to instructions refused which are not noted thereon, is not sufficient to bring before this Court alleged errors in giving the instructions. We are not required to consider alleged errors in giving instructions when the error has not been called to the trial court's attention in a motion for new trial. See City of Blackwell v. Murduck et al., 206 Okl. 446, 244 P.2d 817, and Ritter v. Perma-Stone Co. et al., Okl., 325 P.2d 442.

Defendants urge that the trial court should have given an instruction on "unavoidable accident" and that failure to give such an instruction constituted fundamental error. Such an instruction was not requested nor did defendants otherwise advise the trial court that they relied upon the defense of unavoidable accident.

■ An unavoidable accident is one which occurs while all persons concerned were exercising ordinary care, being one not caused by the fault of any one of the persons, and if the accident could have been prevented by either person by means sug-

gested by common prudence, it is not deemed unavoidable. See Cabe v. Langley, Okl., 348 P.2d 316, 318 and cited cases. In view of the fact that the jury found upon competent evidence that defendants were negligent, the doctrine of unavoidable accident was inapplicable and for said reason the court did not err in failing to instruct on the doctrine.

Defendants make the further contention that in refusing to give instructions that they requested, which alleged error was referred to in their motion for new trial, the trial court erred. The record reflects that no exception was noted on the requested instruction and for said reason error cannot be predicated upon the trial court's failure to give same. See Oklahoma City Tent & Awning Co. v. C. M. Mays Lumber Co. et al., supra. Moreover, all pertinent matter set forth in the requested instructions was incorporated in the instructions that were given by the trial court.

Defendants also contend that the testimony of the doctor who treated plaintiff and whom she called as a witness fails to show that the physical disabilities that he testified to were attributable to the injuries that plaintiff allegedly received in the accident. We are unable to agree. The doctor testified that plaintiff advised him in substance that she received bodily injuries as a result of the accident and he described the injuries at length. Plaintiff testified that she was able-bodied before the injuries and that her injuries resulted from the accident.

Defendants contend that the verdict is excessive.

Plaintiff testified that for a period following the accident she was unable to use her arms; that she suffered great pain and has continued to suffer pain; that as a result of the accident she has, on occasions, been unable to teach at the school where employed; that she was 52 years old; that she was paid $4,700.00 a year as a teacher; that her medical and hospital bills were $1,269.00.

The doctor testified in substance that plaintiff sustained a fracture to her fifth vertebra; that there is "an off-set between the fifth and sixth vertebrae"; that the injury was permanent and resulted in a 20 to 30 per cent permanent disability to the body as a whole; that plaintiff will suffer pain in the future; that in order to alleviate her pain it will be necessary for plaintiff to wear certain devices about her neck which are designed to relieve the condition caused by the fractured vertebra. Plaintiff testified it was necessary for her to use said devices.

We are of the opinion, considering the nature and extent of plaintiff's injuries, that the verdict is not excessive.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and JOHNSON and JACKSON, JJ., concur.

WELCH, DAVISON, HALLEY and IRWIN, JJ., dissent.

HALLEY, Justice (dissenting).

I have read the evidence of both the plaintiff and the defendants and I can find no evidence of negligence on the part of the agents of the defendants that was the proximate cause of the injuries to the plaintiff. The two employees of the defendants drove the wrecker to the point where the Willowby car was in the ditch. They proceeded to the top of the hill and to the north turned the wrecker around and drove down to the Willowby car. There they pulled the wrecked car out after putting it up on its wheels. This was at about three-thirty P.M. in broad daylight. It was a dark day but there is no evidence that the wrecker and the Willowby car could not be seen from the crest of the hill to the north and were so seen by the plaintiff as she came over the hill. Although there is testimony that the agents of the defendants had a blinker light on the wrecker in operation and that a fusee was lighted at the top of this hill to the north

which was controverted, it is immaterial because there was no duty on the part of defendants' agents to have either lighted. No statute has been pointed out that prohibits the defendants from using a wrecker to get cars out of the ditch. No one testified that the manner in which the agents of defendants did their job was careless or negligent. At the time the plaintiff came over the hill the wrecker and the Willowby car were on the west half of the asphalt roadway. The wrecker may have been slightly over the center line to the east but there was still sufficient space for plaintiff to have gotten by if she had had her car under control.

I know of no requirement of our laws that says a wrecker may not use the entire roadway, if necessary, to get a car from the ditch. Only ordinary care would be required under such circumstances. No one testified that such care was not used or that there might have been a safer way to do the job. In the case of Oklahoma Power & Water Co. v. Howell, 201 Okl. 615, 207 P.2d 937, we had a similar case before us and we held as follows:

"Rule 10 of the Road, 69 O.S.1941, § 583, subdivision 10, providing that when a motor vehicle is brought to a stop on a hard-surfaced highway, the left side of motor vehicle must be to the right of the center of the highway at least three feet, does not prohibit the temporary blocking of a highway by a service truck, or wrecking truck, in an endeavor to extricate a stalled or disabled truck from a ditch along side the highway."

Although Rule 10 of the Rules of the Road, having to do with parking has been repealed, a similar statute has been adopted and at no time has the Legislature said that a wrecker might not temporarily block a highway in an endeavor to extricate a stalled or disabled vehicle from a ditch along side the highway in daylight. I wish to quote from the aforementioned case on this point:

"Plaintiff contends that defendant, by so placing its trucks on the highway as to entirely obstruct traffic, was guilty of a violation of Rule 10 of the Road, 69 O.S.1941 § 583, subdivision 10, and that this violation was negligence per se. Rule 10 reads as follows:

" 'Rule 10. Be it further provided that when a motor vehicle is brought to a stop on a hard-surfaced highway the left side of the motor vehicle must be to the right of the center of said highway at least three feet.'

"His contention is briefly stated, that any obstruction of the highway by the stopping of automobiles or trucks thereon for any purpose is a violation of that statute.

"We are unable to agree with this contention. We have not heretofore passed upon the application of that statute to a state of facts similar to that in the instant case, but we think that the use of a highway by a wrecker or rescue truck, in order to extricate a stuck or disabled truck and help it regain the highway and proceed, or be towed to a place where it may be repaired, is not forbidden by the statute. Plaintiff does not cite any case so holding, and we have been unable to find any. On the contrary, the courts of several states, in construing similar statutes, have held that the temporary blocking of the highway by a wrecking truck attempting to pull a stranded or disabled car back on the highway is not violative of such statute. Thus in Henry v. [S.] Liebovitz & Sons, Inc., 312 Pa. 397, 167 A. 304, the Supreme Court of Pennsylvania, construing a statute which provided that in no event should any person park or leave standing any vehicle, either attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite the standing vehicle should be left free for the passage of other vehi-

cles, held that the temporary obstruction of the highway by a towing truck, which was attempting to pull a disabled car back on the road by using a chain attached to such car, was not within the prohibition of the statute. * * *"

I think the foregoing case and the authorities mentioned therein adequately sustain the defendants' case.

It is to be remembered that persons using the highway to get vehicles out of a ditch on the side thereof have the right to think that other persons operating motor vehicles on the highway will conform to our statute regulating the speed of such vehicles and particularly 47 O.S.Supp.1955 § 121.3 (a), which is as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, *and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead;* * * *."  (emphasis added)

The plaintiff relies on the case of R & S Auto Service et al. v. McGill, 205 Okl. 495, 238 P.2d 1089, to sustain the judgment in this case. That is clearly distinguishable from the case at bar in that the accident out of which the cause of action arose occurred at night. The statutes make a greater requirement for vehicles blocking a highway at night than in the day time. 47 O.S.1951 § 148, Par. (b) is as follows:

"Every vehicle upon a highway within this State, at any time from half hour after sunset, to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible, persons and vehicles on the highway at a distance of five hundred (500') feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as hereinafter stated.

"Whenever requirement is hereinafter declared as to the distance from which certain lamps and devices shall render objects visible, or within which such lamps or devices shall be visible, said provisions shall apply during the time stated in paragraph (b) of this Section upon a straight, level, unlighted highway under normal atmospheric conditions unless a different time or condition is expressly stated.

"Whenever requirement is hereinafter declared as to the mounted height of lamps or devices it shall mean from the center of such lamp or device to the level ground upon which the vehicle stands."

No one testified that this wrecker was not discernible at five hundred feet, as provided by the above Section. The plaintiff testified as follows:

"* * * I looked down below me—I am sure I had slowed down just before that because you would pick up a little speed to go up the hill and then when I topped the hill I slowed down and the first thing I saw in the road— I don't think I would have made out it was a car and a wrecker, it happened so fast, but there was an object there in the road and as soon as I saw it I stepped on my power brakes and instead of the brakes holding the car skidded and the back end swung around to the front and it made it's way then on down to the ditch and it was facing more back up the hill then when it stopped."

The witnesses, Andrews and Mysinger, for the plaintiff had no difficulty in seeing the wrecker before and after the accident.

There being no evidence of negligence on the part of defendants' servants and employees, I think the majority opinion is wrong and I dissent.