C. WALLACE PLUMBING COMPANY, Inc., a Corporation, Plaintiff in Error,

v.

WESTERN STEEL ERECTION COMPANY, a Corporation, Defendant in Error.

No. 39082.

Supreme Court of Oklahoma.

March 19, 1963.

Charles E. Dierker, Tom S. Williams, Oklahoma City, Coon & Hoffman, Dallas, Tex., for plaintiff in error.

Looney, Watts, Looney & Nichols, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

The relative position of the parties to this appeal is the same as in the trial court. Hereinafter they are designated as in that court, i. e., the plumbing company as plaintiff and the steel erection company as defendant.

In connection with the construction of the academic complex at the Air Force Academy, the general contractor sublet to the plaintiff the installation of the plumbing including underground drainage system. Defendant company had the contract for the erection of the steel for said complex. Plaintiff installed most of the underground drainage system before defendant commenced erection of the steel in the structure.

Plaintiff in its petition alleged that defendant was guilty of negligence in that it failed to keep a proper lookout for the underground piping and risers therefrom installed by plaintiff; failed to protect same; and erected such steel in a reckless manner, heedless of the necessity for safeguarding the system installed by plaintiff.

The parties waived a jury and tried the case from which this appeal arises to the court. Defendant demurred to plaintiff's evidence. The court sustained the demurrer and rendered judgment for defendant.

Mr. Graham, plaintiff's project manager, testified that employees of defendant damaged plaintiff's piping "mainly by their heavy equipment"; that when defendant's motor crane would pick up steel beams "very often would swing across the ground and destroy our piping that was up"; that some piping was damaged when run over by defendant's "motor trucks and heavy winch trucks"; that the damage "was continuous from where they" (defendant's workmen) "started at the south end of the building on to the north; it just progressed as they progressed on through the building"; that he was sure who did the damage; that he personally saw a few instances of damage occur; that he was on the physical site fifty per cent of the time; that he protested to Mr. Rogers, whom he stated was defendant's superintendent, that damage was being done.

Mr. Harpster, general foreman for plaintiff on the job here in question, testified that the damage started "around the first of April"; that "It went on during the course of all erection of steel until they completed it"; that he personally saw the big portion of the damage done; that he talked to defendant's foreman about the damage; that such foreman said "they were the roughest bunch of steel workers he ever had working for him, and he would try to prevent further damage"; that he made six such protests to the foreman and two to defendant's superintendent; that the "risers" which defendant damaged were from one to three feet above ground; that "each time we would make a repair I had my foreman keep an accurate record of the material and the man hours and the dates of the damage repaired", that "each repair was noted—who done the damage".

Mr. McCally testified that on April 10, 1957, in a meeting which he attended in his capacity as plaintiff's vice-president, repre-

sentatives of plaintiff's prime contractor, the Air Force, the architects and defendant were present; that such meeting was called to discuss the damage being done to plaintiff's drainage system by defendant's employees and to prevent further damage to plaintiff's piping; that one of the defendant's representatives at such meeting was their present vice-president; that defendant's representatives did not deny that their employees were damaging plaintiff's piping; that defendant's steel erection foreman stated that "they would do better, they would try to correct the situation."

Mr. McCally further testified as follows:

"Q: How close to the ground did they swing the steel, within your personal knowledge, on this particular occasion?

"A: I would say two or three feet above the ground, and I saw them setting down a few times, so it would range from nothing up to about three feet high until they got it over to the center of the building."

\* \* \* \* \* \*

"Q: (By Mr. Hoffman) You say the risers are visible to the operator of a crane?

"A: Yes, sir.

"Q: All right. If he sees it, if a riser is in the path of the steel, what does he have to do to avoid hitting the riser?

"A: Raise the steel up."

\* \* \* \* \* \*

"Q: In your experience in the operation of a crane or the supervision of crane operators in your work, is there any reason why an object of that type could not be lifted three or four feet above the ground as it swung across?

"A: I don't see any reason."

\* \* \* \* \* \*

"Q: (By Mr. Hoffman) What was your answer?

"A: I don't see why it couldn't be raised above that height of four or five feet."

\* \* \* \* \* \*

"Q: (By Mr. Hoffman) How would you go about avoiding hitting risers or other object sticking up within one to three feet of the ground?

"A: By not crossing over the top of them with the steel.

"Q: What do you mean by 'not crossing over the top of them'?

"A: I mean you can locate the crane more than one place. You can locate the crane inside the building or on the outside of the building and lift straight up and then over, and not cross over the ground underneath the steel."

\* \* \* \* \* \*

"Q: In your experience in the operation of cranes and the supervision of the operation of cranes in lifting heavy objects, is there any reason that you would have to go over a particular spot and knock something down in order to lift the object with a crane of that type?

"A: I would say no."

Plaintiff argues that it "made at least a prima facie case"; that "It has shown the installation of the plumbing, the damage thereto; that same was carelessly and wantonly perpetrated, and the amount of the damages has been proven."

In Williamson v. Winningham, 199 Okl. 393, 186 P.2d 644, wherein the issue on appeal was whether plaintiff had made a prima facie case entitling him to a judgment, we said at page 649 that:

"A demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove, and all inferences and conclusions which can be reasonably and logically drawn therefrom. The fact that the action is one of legal cognizance insofar as establishment of debt is concerned and was tried to the court in the absence of a jury does not defeat the rule when the evidence is neither conflicting, inherently improbable, nor the testimony

sought to be impeached. Benke v. Stepp, Okl.Sup., 184 P.2d 615.".

In 57 C.J.S. Master and Servant, § 610, page 382, is the following language:

"Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor." See also Flanagan v. Wells Bros. Co., 237 Ill. 82, 86 N.E. 609, 127 Am.St.Rep. 315.

In Cabe v. Langley, Okl., 348 P.2d 316, we said:

"This will be found at pp. 343, 344, 65 C.J.S. Negligence § 4b(2) (c): 'When there is a duty to look, a failure to do so constitutes negligence. Likewise, where there is such a duty, mere looking is not sufficient, but a person is guilty of negligence if he does not see what is plainly visible and within the range of vision, or obviously apparent, or observable by due or ordinary, or ordinary and reasonable, care, or if he does not see what, by the proper use of his senses, he might have seen; one may be liable because of what he should have seen as well as for what he actually saw * * *.'"

The gist of the instant action is the alleged breach by defendant of the duty which it is said to have owed to plaintiff not to damage plaintiff's drainage system by any wrongful or negligent act.

In Lisle v. Anderson, 61 Okl. 68, 159 P. 279, L.R.A.1917A, 128, we said in the third paragraph of the syllabus:

"Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises; and, if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties."

■ It was not denied that defendant's employees did some damage to plaintiff's underground drainage system. Plaintiff was entitled to a judgment for nominal damages at the least. See 23 O.S.1961 § 98.

■ Plaintiff having made a prima facie case entitling it to a judgment, the trial court should have overruled the demurrer to the evidence, and proceeded with the trial.

Reversed with directions to grant plaintiff a new trial.